_____ FILED        _____ RECEIVED
_____ ENTERED      _____ SERVED ON
            COUNSEL/PARTIES OF RECORD

APR 06 2023

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY: _____ DEPUTY

Spann; Nicoshalmar-James/Agent & Spann; Dayna-Marie/Agent
3936 Juanita May Avenue
North Las Vegas, Nevada 89032
(702)-527-9346, (702)-219-6749
Dspann2109@outlook.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

NICOSHALMAR SPANN,

DAYNA SPANN,

      Plaintiff,

vs.

JAMIE DIMON,

JEREMY BARNUM,

CHASE BANK,

      Defendant

Case No.:  2:23-cv-00503-RFB-VCF

COMPLAINT FOR INJUNCTIVE RELIEF, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, NON-RESPONSE, NON-PERFORMANCE, SECURITY FRAUD, EXTORTION

     NICOSHALMAR SPANN ("Plaintiff") and DAYNA SPANN ("Plaintiff"), by

and through their undersigned attorney in fact Spann; Nicoshalmar-James/Agent, and Spann;

Dayna-Marie/Agent, brings this complaint against Defendants', CHASE BANK ("Company"),

Jeremy Barnum ("Chief Financial Officer"), Jamie Dimon ("Chief Executive Officer")

(collectively, "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

    1.  This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it arises

       under the laws of the Untied States.

2. Venue is proper in the District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants' conduct business in this District.

**PARTIES**

3. Plaintiffs', NICOSHALMAR SPANN and DAYNA SPANN, are individuals residing at 3936 JUANITA MAY AVENUE, NORTH LAS VEGAS, NEVADA.

4. Defendant, CHASE BANK, is a New York corporation with its principal place of business at 270 Park Avenue, New York, New York.

5. Defendant, Jamie Dimon, is an individual residing at 270 Park Avenue, New York, New York, and serves as the Chief Executive Officer of CHASE BANK.

6. Defendant, Jeremy Barnum, is an individual residing at 270 Park Avenue, New York, New York, and serves as the Chief Financial Officer of CHASE BANK.

**FACTUAL BACKGROUND**

7. On or about September 29, 2018, Plaintiffs' and CHASE BANK entered into a contract, wherein CHASE BANK agreed to a mortgage agreement involving the extension of credit.

8. Since entering into the contract, CHASE BANK has failed to perform its obligations, resulting in a breach of contract.

9. Furthermore, CHASE BANK has not responded to the Plaintiffs' tender of performance, exacerbating the issue.

10. The Chief Financial Officer has engaged in extortion and breached their fiduciary duty to the Plaintiffs' causing significant harm.

## COUNT I- BREACH OF CONTRACT

11. Plaintiffs' re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 10 above.

12. CHASE BANK has breached the contract by failing to perform its obligations as agreed upon.

13. As a direct and proximate result of CHASE BANK'S breach, Plaintiffs' have suffered damages in an amount to be proven at trial.

## COUNT II- NON-PERFORMANCE

14. Plaintiffs' re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 13 above.

15. CHASE BANK has failed to fulfill the terms of the contract, resulting in a failure to perform.

16. As a direct and proximate result of CHASE BANK'S non-performance, Plaintiffs' have suffered damages in an amount to be proven at trial.

## COUNT III- BREACH OF FIDUCIARY DUTY

17. Plaintiffs' re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 16 above.

18. The Chief Financial Officer owed a fiduciary duty to the Plaintiffs'.

19. The Chief Financial Officer breached their fiduciary duty by engaging in extortion and other misconduct.

20. As a direct and proximate result of the Chief Financial Officer's breach, Plaintiffs' have suffered damages in an amount to be proven at trial.

### COUNT IV- SECURTIIES FRAUD

21. Plaintiffs' re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 20 above.

22. Defendants' engaged in fraudulent activities in violation of federal securities laws, causing harm to Plaintiffs' investments and interests.

23. As a direct and proximate result of Defendants' securities fraud, Plaintiffs' have suffered damages in an amount to be proven at trial.

### COUNT V- VIOLATION OF THE FEDERAL RESERVE ACT

24. Plaintiffs' re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 23 above.

25. Defendants' conduct violated provisions of the Federal Reserve Act, causing undue harm to Plaintiffs'.

26. As a direct and proximate result of Defendants' violations of the Federal Reserve Act, Plaintiffs' have suffered damages in an amount to be proven at trial.

### COUNT VI- OTHER FEDERAL LAW VIOLATIONS

27. Plaintiffs' re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 26 above.

28. Defendants' actions have resulted in the violation of other relevant federal laws and regulations, further damaging Plaintiffs' interests.

29. As a direct and proximate result of Defendants' violations of other federal laws, Plaintiffs' have suffered damages in an amount to be proven at trial.

COMPLAINT FOR INJUNCTIVE RELIEF, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, NON-RESPONSE, NON-PERFORMANCE, SECURITY FRAUD, EXTORTION - 4

## DOCUMENTARY EVIDNCE INCLUDED AS EXHIBITS

A. **Exhibit 1** will show on February 21, 2023, Plaintiffs' issued the following documents to the Defendants' documented by USPS.

    1. Instructions from the Agents' on behalf of the principals' accepting all titles, rights, interest, and Equity owed to the principals. We requested the Chief financial officer to apply the principal balance to the account for setoff and settlement.

    2. Promissory note was issued and was not honored by Defendants'.

    3. 12 U. S. Code § 1431- Powers and duties of the banks was included to notify Defendants' of their obligations.

    4. Payoff quote of the principals' unpaid balance was endorsed in accordance with the Bill of Exchange Act and was issued to the Defendants' for setoff and settlement which was dishonored by non-response and non-performance.

    5. Contract was also included to remind the Defendants' of their contractual obligation and to provide proof of the agreement between both parties.

    6. Plaintiffs' sent financial statements in possession to Defendants' endorsed for strict performance to execute the contractual obligations.

B. **Exhibit 2** will show on February 22, 2023, included additional information IRS 2848 "Power of Attorney" for both Plaintiffs'.

C. **Exhibit 3** will show on March 1, 2023, second notice Opportunity to Cure giving Defendants' opportunity to cure the breach. Included documents are listed below:

1. Instructions on behalf of the principal requesting strict performance and to execute the contract.

2. Federal Reserve Act Section 16 Note Issues Part 1 and 2 giving notice of federal laws that the Defendants' must be in compliance with.

D. **Exhibit 4** will show on March 13, 2023, Final notice opportunity to cure/Arbitration/Intent to sue was issued to elevate performance to avoid litigation. Also included were the documents listed below:

1. Instructions issued on behalf of the principal to Chief Financial Officer Jeremy Barnum given to elevate Defendants' lack of performance to execute the contract.

2. An invoice for the breach in accordance with the Federal Reserve Act Section 29 Civil Money Penalty Part (c) and (d).

3. Federal Reserve Act Section 29 Civil Money Penalty Part (c) and (d) from the Federalreserve.gov website for further proof of claim.

4. Federal Reserve Act Section 18 Refunding Bonds from Federalreserve.gov website for proof of claim.

E. **Exhibit 5** will show on March 28, 2023, Notice of Injunctive Relief and Intent to file Federal Complaint was issued to Chief Executive Officer Jamie Dimon along with the documents listed below:

1. 18 U. S. Code § 8 Obligation or other security of the United States Defined was given showing that this bill is an obligation of the United States. Information can be found on law.cornell.edu.

2. Setoff definition from Justice.gov website.

COMPLAINT FOR INJUNCTIVE RELIEF, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, NON-RESPONSE, NON-PERFORMANCE, SECURITY FRAUD, EXTORTION - 6

3. Endorsed financial instrument for April 2023.

4. Copy of drafted Federal Complaint that gave Defendant one more good faith notice to immediately elevate performance, respond, or defend and Defendant was given five (5) days.

5. Plaintiffs' issued all documentation sent to the principals' residence on March 27, 2023 back to the Defendants' as the content held no bearing on the matter at hand.

F. **Exhibit 6** Office of the Comptroller of the Currency complaint that was filed on March 27, 2023, with all supporting documentation.

G. **Exhibit 7** will show the continued lawful performance tendered for the April 1, 2023, bill (bill of exchange) that was issued on March 27, 2023.

## CASE LAW SUPPORTING PLAINTIFFS' CLAIM

In the present case, Plaintiffs' alleges that Defendants' breached their fiduciary duty by failing to act in the best interest of Plaintiffs', thereby causing harm to Plaintiffs'. In support of this claim, Plaintiffs' relies on the principles established in the case *Norman v. Baltimore & Ohio Railroad Co., 294 U.S. 240 (1935).*

In Norman, the U.S. Supreme Court addressed the role of the Federal Reserve in the issuance and redemption of currency. While this case may not directly involve a breach of fiduciary duty, it does underscore the importance of ensuring that parties adhere to their legal obligations, particularly in the context of financial and monetary transactions.

The Norman decision demonstrates that the courts recognize the significance of parties fulfilling their obligations and acting in good faith. By analogy, a party entrusted with a

COMPLAINT FOR INJUNCTIVE RELIEF, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, NON-RESPONSE, NON-PERFORMANCE, SECURITY FRAUD, EXTORTION - 7

fiduciary duty must act in the best interest of the party to whom the duty is owed, prioritizing the interests of the beneficiary over their own.

In the present case, Plaintiffs' contends that Defendants', who owed a fiduciary duty to Plaintiffs', failed to fulfill this duty by engaging in actions that were contrary to Plaintiffs' best interests. As a result, Plaintiffs' suffered harm, and Defendants' actions should be viewed as a breach of fiduciary duty.

In light of the principles articulated in Norman, the court should consider the importance of parties adhering to their legal obligations, especially when fiduciary duty is at stake. Plaintiffs' requests that the court find Defendants' in breach of their fiduciary duty and award appropriate damages to compensate for the harm suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs', NICOSHALMAR SPANN, and DAYNA SPANN, respectfully requests that the Court enter judgment in its favor and against Defendants, CHASE BANK, Jamie Dimon, and Jeremy Barnum, and award the following relief:

    A.  Injunctive relief requiring Defendants' to perform their obligations under the contract, also apply the principal balance to the account for setoff and settlement, and to cease their unlawful conduct;

    B.  Monetary damages in an amount to be proven at trial;

    C.  Prejudgment and post-judgment interest;

    D.  Reasonable attorney's fees and costs incurred in bringing this action; and

    E.  Such other and further relief as the Court deems just and proper.

1

**DEMAND FOR JURY TRIAL**

2

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs' demand a

3

trial by jury on all issues so triable.

4

5

6  Dated this 6 day of April, 2023

7

8

9  By: Spann; Nicoshalmar-James/agent

10  For: NICOSHALMAR SPANN
       w/o recourse

11  _____
       Spann; Nicoshalmar-James/Agent

12                Without Recourse

13

14  By: Spann; Dayna-Marie/Agent

15  FOR: DAYNA SPANN   w/o Recourse

16  _____
       Spann; Dayna-Marie/Agent

       Without Recourse

17

18

19

20

21

22

23

24

25

26

27

28  COMPLAINT FOR INJUNCTIVE RELIEF, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY,
    NON-RESPONSE, NON-PERFORMANCE, SECURITY FRAUD, EXTORTION - 9

NICOSHALMAR SPANN
3936 JUANITA MAY AVENUE
NORTH LAS VEGAS NEVADA 89032
(702)-527-9346
Nspann07@gmail.com

# Exhibit 1

NICOSHLAMAR SPANN & DAYNA SPANN
3936 JUANITA MAY AVENUE
NORTH LAS VEGAS NEVADA 89032

February 21, 2023

Jeremy Barnum
CHASE BANK
270 Park Avenue
New York, New York 10017

# 1st Notice- INSTRUCTIONS

**NOTICE TO AGENT IS NOTICE TO PRINCIPAL**
**NOTICE TO PRINCIPAL IS NOTICE TO AGENT**

Dear Jeremy Barnum,

I, Spann; Nicoshalmar-James/Agent on behalf of NICOSHALMAR SPANN/Principal, and I, Spann; Dayna-Marie/Agent on behalf of DAYNA SPANN/Principal, do hereby, accept all titles, rights, interests, and Equity owed to the principal NICOSHALMAR SPANN, and DAYNA SPANN. We hereby instruct Jeremy Barnum to apply principal balance to Account #:1317022200 for setoff and settlement. Attached is lawful performance of the principal obligation along with supporting documentation.

We hereby instruct Jeremy Barnum to respond in writing within 5 business days giving notice that these instructions have been received and applied. We further request copies of endorsed Promissory Note signed by registered agent Jeremy Barnum.

If no response is received in 5 days to the principal address herein, we can assume that credits have been applied and these instructions have been completed. If you have any issues with these instructions, please seek legal advice.

In good faith and honor,

_By Spann;Nicoshalmar-James/agent_ For: NICOSHALMAR SPANN
Spann; Nicoshalmar-James/Agent  No recourse
**Without Recourse**

_By: Spann; Dayna-Marie /Agent_
For: DAYNA SPANN
Spann; Dayna-Marie/Agent  W/O Recourse
**Without Recourse**

# *PROMISSORY NOTE*

$234,837.60                                      Date: February 18, 2023

For value received, the undersigned CHASE of 270 Park Avenue, New York, New York 10017 (the "Borrower"), promises to pay to the order of NICOSHALMAR SPANN and DAYNA SPANN of c/o 3936 Juanita May Avenue, North Las Vegas, Nevada 89032 (collectively, the "Lender"), the sum of $234,837.60 with no interest.

## I. TERMS OF REPAYMENT

### A. Payments

The unpaid principal and accrued interest shall be payable in full on any future date on which the Lender demands repayment (the "Due Date").

Unpaid principal after the Due Date shall accrue interest at a rate of 5% annually until paid.

## II. SECURITY

This Note is secured by personal property in a Note signed September 29, 2018. The Lender is not required to rely on the above security instrument and the assets secured therein for the payment of this Note in the case of default, but may proceed directly against the Borrower.

## III. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

## IV. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

1) the failure of the Borrower to pay the principal and any accrued interest when due;

2) the liquidation, dissolution, incompetency or death of the Borrower;

3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower;

7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

8) the sale of a material portion of the business or assets of the Borrower.

In addition, the Borrower shall be in default if there is a sale, transfer, assignment, or any other disposition of any assets pledged as security for the payment of this Note, or if there is a default in any security agreement which secures this Note.

## V. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VI. MISCELLANEOUS

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.

## VII. GOVERNING LAW

This Note shall be construed in accordance with the Federal Reserve Act section 16.

## VIII. SIGNATURES

This Note shall be signed by Jeremy Bernum on behalf of CHASE, and Spann; Nicoshalmar-James on behalf of NICOSHALMAR SPANN, and Spann; Dayna-Marie on behalf of DAYNA SPANN.

**[SIGNATURE PAGE FOLLOWS]**

Borrower:
CHASE


By: _____    Date: _____

    Jeremy Bernum


Lender:
NICOSHALMAR SPANN

By: Spann; Nicoshalmar-James/agent

By: FOR: NICOSHALMAR SPANN    Date: 2|18|2023
               W/o recourse

    Spann; Nicoshalmar-James


Second Lender
DAYNA SPANN


By: Spann; Dayna-Marie / Agent

By: FOR: DAYNA SPANN    Date: 2|18|2023
            W/o Recourse

    Spann; Dayna-Marie

*Accepted   2/18/2023*

*Pay to bearer*

**Chase (Mail Code LA4-6455)**
700 Kansas Lane
Monroe, LA 71203

**CHASE** ⬤

*TWO HUNDRED THIRTY-FOUR THOUSAND EIGHT HUNDRED THIRTY-SEVEN 60/100.*

February 16, 2023

DAYNA M SPANN
NICOSHALMAR JAMES SPANN
3936 JUANITA MAY AVE
NORTH LAS VEGAS, NV 89032

*234,837.60*

Account Number: 1317022200

Dear DAYNA M SPANN and NICOSHALMAR JAMES SPANN

We've enclosed your free payoff quote and important information about paying off your mortgage. We're sending you this quote because it was requested on your behalf, you requested it, your payoff amount changed or you are reaching your final payment.

**The total payoff amount due for your mortgage is $234,837.60. This amount is good through 03/30/2023.** If 03/30/2023 falls on a holiday or non-working day, the payoff amount is valid if we receive it by 6 p.m. Eastern Time the next business day. See the following pages for the complete breakdown of the total amount due.

**Here's what you'll need to do before payoff:**
• Continue making your monthly payments until you send us the amount needed to pay off your mortgage.
• If you're enrolled in our automatic payment service, please don't cancel it. If you are not sending funds to pay off your mortgage, we'll continue to withdraw your payments until your principal balance reaches zero or your loan reaches maturity. However, automatic payments do not cover all loan balances; we will let you know if you still owe a balance after these payments stop.
• If you pay through another bill payment service, you'll need to cancel your payments after your mortgage has been paid off. Work with your provider in advance so the payment won't be automatically sent after your loan is paid off.

**Send your funds to pay off your mortgage using one of these options:**

| **Wire transfer (fastest option):** | **Send a check or money order by overnight or regular mail:** |
|---|---|
| For same-day processing, we must receive the full payoff amount before 6 p.m. Eastern Time. The wire transfer provider may charge a fee for this service. | Please write your Chase loan number 1317022200 on the check and include your name, property address and closing agent's contact information, if any. |
| Include the following information with your wire transfer: JPMorgan Chase Bank, N.A.<br>Account number: 323553729<br>Routing number: 021000021<br>Account name: Chase Payoff Wire Account<br>OBI text: 1317022200<br>Attn: Payoff Processing<br>Your name<br>Your property address<br>Your closing agent's information | Chase<br>Attn: Payoff Processing<br>Mail Code LA4-6455<br>700 Kansas Lane<br>Monroe, LA 71203 |

You can request a free updated payoff quote by signing in to chase.com or by calling us anytime at 1-877-505-2894, or 1-800-582-0542 for TTY services. We recommend that you do this on the day you plan to send the funds to avoid a possible double escrow payment. For more information, go to chase.com/payoff.

If you have a subordinate mortgage that was established as part of Home Affordable Modification Program partial claim agreement, you'll receive an additional quote from Novad containing all of the information you need to pay off and release your existing second lien on the property. Both quotes contain the most up-to-date information about your loan and the payoff amounts needed to pay it in full. Send the full payoff amount listed on the Chase quote to us, and send the full

payoff amount for your subordinate mortgage to Novad.

FOR DEPOSIT ONLY

By:

Spann; Nicoshalmar James/bene

W/o recourse

By: Spann; Dayna-Marie /Bene

w/o Recourse

# CHASE ⬤

**Requestor:**
DAYNA M SPANN
NICOSHALMAR JAMES SPANN
3936 JUANITA MAY AVE
NORTH LAS VEGAS, NV 89032

**Customer Name And Property Address:**
DAYNA M SPANN
NICOSHALMAR JAMES SPANN
3936 JUANITA MAY AVE
NORTH LAS VEGAS, NV 89032

## BREAKDOWN OF AMOUNT OWED

| | | | | |
|---|---|---|---|---|
| Principal Balance: | $ 203,991.16 | Second Principal Balance: | $ 27,655.92 |
| Interest from 02/01/2023 to 03/30/2023: | $ 2,022.57 | Recording Costs: | $ 42.00 |
| Escrow Advance Balance: | $ 1,110.95 | Corporate Advance Balance: | $ 15.00 |

**Total Amount Secured by Mortgage** ……………………………………………………………………………………… $234,837.60

**Total Amount Owed Including Service Fees**……………………………………………………………………… $234,837.60

| | | |
|---|---|---|
| Interest Rate: | | 5.990% |
| Per Diem: | $ | 33.48 |
| Monthly Late Charge: | $ | 64.93 |

Please send your payoff funds by wire transfer, check or money order as we've instructed above. After your mortgage is paid off, you'll no longer be able to view account information at chase.com. We recommend that you print or save any loan information or documents you think you may need from chase.com before paying off the loan.

**Here's what to expect after you pay off your loan:**
- We'll send you a letter confirming that you mortgage is paid off within one business day of payoff.
- If we received more than we need to pay off the loan, or if there's a positive escrow balance after payoff, we'll send you a check by mail for this amount. You should receive it within 10 days after paying off the mortgage. If you're refinancing with us, we'll either apply any escrow balance to your new loan and continue to pay the taxes and insurance for your property, or send you a check by mail, depending on the choice you made during the refinance process.
- You can request a copy of the lien release from your county recorder's office 60 to 90 days after payoff.
- We'll send your IRS Form 1098 (Mortgage Interest Statement) by mail in January.
- If your loan had an escrow account to pay your taxes and insurance, you'll now be responsible to pay these directly, unless you have a new mortgage with an escrow account.
- We'll mail all the items listed above to the mailing address on the payoff quote. If your mailing address has changed, please fill out the enclosed form and return it to us.

If you have any questions, please go to chase.com/payoff or call us

Sincerely,

Chase
1-800-848-9199
1-800-582-0542 TTY
chase.com

Esta communicación contiene información inportante acerca del la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198.

### Important information about your payoff

The payoff amount is subject to our final verification once we receive the payoff funds. Regardless of the "good through" date on page 1, if the loan is in default, all default-related processes, including but not limited to foreclosure sale, will continue and all fees and costs incurred after this payoff quote is issued will continue to be assessed until the loan is paid in full. We don't charge a fee when you request a quote. If you can't pay the amount listed on page 1 or are paying off your loan as a result of a natural disaster, please call us at 1-866-550-5705 to see if we can offer you assistance. You can also find more information at chase.com/

MortgageAssistance.

We only accept payoff funds on business days. We reserve the right, except where prohibited, to adjust the payoff amount and refuse any funds that aren't enough for any reason, including, but not limited to, an error in calculation of the Total Amount Owed, previously dishonored check or money order, stop payment of checks or pending automatic payments or additional payments we made between the date of this payoff statement and the date we received the funds.

**Escrow**

We'll pay all escrowed items including hazard and flood insurance, and taxes, from your escrow account as normally scheduled up to the date we receive the payoff funds. You or your closing agent (if applicable) will need to request a refund for any duplicate tax or insurance payments. You can view your escrow payment history up to the date of payoff by signing into your account at chase.com. If you're refinancing with us, we'll either apply any escrow balance to your new loan and continue to pay the taxes and insurance for your property, or mail you a check, depending on the choice you made during the refinance process.

**Short Payoff**

If the amount we receive isn't enough to pay off this loan, we may use funds in the escrow balance to cover the short payoff. If the escrow balance isn't enough to pay off the total amount owed, we'll return the payoff funds and you'll need to request a new quote.

**Late Charges**

The amounts shown on this payoff statement are based on all monthly payments we receive having cleared your bank account. We may assess a late charge for any payment we receive after the late charge assessment date and add this fee to the Total Amount Owed. All checks sent for your monthly payments must have cleared your bank account. We'll assess a late fee at the end of the business day if we don't receive the current payment by 03/16/2023, and we may add this fee to the Total Amount Owed.

**If your account has a Corporate Advance balance**

The amount shown in the payoff breakdown section is based on certain acts completed in servicing your mortgage contract and maintaining the property that may be charged as part of the terms of your loan documents or permitted by applicable law. We do not charge a fee for preparing this quote.

**Credit Reporting**

Please continue to make your monthly payments on time until your loan is paid off. We may report payments we receive more than 29 days after the due date as late to the credit reporting agencies.

**Payoff Rescissions**

If we receive funds and apply them to pay off your account, but are then asked to return them because of a payoff rescission or for any other reason, unless prohibited by law, we'll charge a fee of $800 to restore your account on our system. We must receive this fee and applicable montly payments due before we'll return payoff funds. We also reserve the right to not return the payoff funds.

**Insurance Claims**

If you are paying off your account as a result of an insurance claim, please call us at 1-866-742-1461 to see if we can offer you assistance.

**Cooperative Unit or Refinancing in the State of New York**

If you're completing the sale or refinancing your loan with another lender on a cooperative unit (a "co-op") in New York, New Jersey or Connecticut and the original stock certificate and proprietary lease will be required at closing, OR you're refinancing your loan on a single-family residence in the State of New York and wish to have us assign our mortgage and note to the lender you're refinancing with for purposes of saving on New York mortgage recording tax, please send a written request with your name, property address, Chase loan number, new lender's information (if applicable), and your attorney's contact information. You can email your request to tri.state@jpmchase.com or fax it to 1-318-402-4389 (free from any Chase branch).

An additional processing fee of $125 will be required for processing the sale or refinance of a co-op unit. An additional processing fee of $250 will be required for assigning our mortgage and note in connection with a third party refinance in the state of New York. An updated payoff quote will be provided at closing. Please allow up to 45 days for processing.

**Relationship Pricing Discounts**

If your home lending account contributed to any relationship pricing discounts with us, it will no longer be included in any discount calculations when it's paid off.

You'll still be able to call our us anytime at 1-800-848-9136, or 1-800-582-0542 for TTY services.

**FHA/USDA Partial Claim**

If you have a subordinate interest-free mortgage established as part of a partial claim agreement, you'll receive an additional quote several days later from either Information System & Networks Corporation (ISN) (FHA) or USDA. This quote contains all of the information you need to pay off and release your existing second lien on the property. The FHA/USDA partial claim subordinate lien loan must be paid off in addition to the first lien. Both quotes contain the most up-to-date information about your loan and the payoff amounts needed to pay it in full. Send the full payoff amount listed on the Chase quote to us, and send the full payoff amount for

your subordinate quote to the address listed on your additional quote from either ISN or USDA. If you have questions about the partial claim payoff quote, please call: FHA at 1-800-225-5342 or at 1-800-877-8339 for TTY service for the hearing impaired/ USDA at 1-866-550-5887.

**If you participated in Principal Reduction Alternative (PRA) program, you may be eligible to have your PRA forbearance canceled.**

We'll reduce the unpaid principal balance of your loan by one-third of the initial PRA forbearance amount (a predetermined amount) if your loan is in good standing on the first, second and third anniversary dates of your trial period. This means if you continue to make your payments on time for three years, we'll cancel the entire PRA forbearance amount.

We'll deduct the unapplied PRA forbearance amount from your payoff balance if the loan is in good standing and you pay off the loan in full:

- Anytime 30 days after the modification effective date,
- After the PRA reporting and payment processes are available, and
- Before the payment of the entire PRA forbearance amount.

Your payoff balance may increase if your payments are late. You can lose good standing if you haven't paid for three full monthly payments. The loan can't be restored to good standing even if you later make the late payments. If you lose good standing after your payoff request but before the payoff, your actual payoff will be higher and you'll need to request a new payoff quote.

**Lien Release**

We'll send the lien release to your county recorder's office after we apply your payoff funds to your account. If you'd like a copy of the lien release, you can request one from your county recorder's office 60 to 90 days after payoff.

For more information about the lien release process, please call us at 1-866-756-8747 or write to us at:

Chase
Attn: Research Correspondence
780 Kansas Lane, Suite A
Monroe, LA 71203



## Mortgage Mailing Address Change Form

**If your mailing address has changed, please fill out this form and send it to:**

**Mail:** Chase (Mail Code OH4-7302)
P.O. Box 24696
Columbus, OH 43224

**Fax:** 1-614-422-7575

Chase Mortgage Account Number: 1317022200

Mortgagor Name(s): DAYNA M SPANN and NICOSHALMAR JAMES SPANN

**New Contact Information:**

Mailing Street Address: _____

_____

City: _____ State: _____ ZIP: _____

Customer Requesting Change (Print Name): _____

Customer's Signature: _____ Date: _____

Please call us at 1-800-848-9136 for any other changes.

# 12 U.S. Code § 1431 - Powers and duties of banks

- U.S. Code
- Notes

prev | next

**(a)BORROWING MONEY; ISSUING BONDS AND DEBENTURES; GENERAL POWERS**
Each Federal Home Loan Bank shall have power, subject to rules and regulations prescribed by the Director, to borrow and give security therefor and to pay interest thereon, to issue debentures, bonds, or other obligations upon such terms and conditions as the Director may approve, and to do all things necessary for carrying out the provisions of this chapter and all things incident thereto.

**(b)ISSUANCE OF CONSOLIDATED FEDERAL HOME LOAN BANK DEBENTURES; RESTRICTIONS**
The Office of Finance, as agent for the Banks, may issue consolidated Federal Home Loan Bank debentures which shall be the joint and several obligations of all Federal Home Loan Banks organized and existing under this chapter, in order to provide funds for any such bank or banks, and such debentures shall be issued upon such terms and conditions as such Office may prescribe. No such debentures shall be issued at any time if any of the assets of any Federal Home Loan Bank are pledged to secure any debts or subject to any lien, and neither the Office of Finance nor any Federal Home Loan Bank shall have power to pledge any of the assets of any Federal Home Loan Bank, or voluntarily to permit any lien to attach to the same while any of such debentures so issued are outstanding. The debentures issued under this section and outstanding shall at no time exceed five times the total paid-in capital of all the Federal Home Loan Banks as of the time of the issue of such debentures. It shall be the duty of the Office of Finance not to issue debentures under this section in excess of the notes or obligations of member institutions held and secured under section 1430(a) of this title by all the Federal Home Loan Banks.

**(c)ISSUANCE OF FEDERAL HOME LOAN BANK BONDS**
At any time that no debentures are outstanding under this chapter, or in order to refund all outstanding consolidated debentures issued under this section, the Office of Finance, as agent for the Banks, may issue consolidated Federal Home Loan Bank bonds which shall be the joint and several obligations of all the Federal Home Loan Banks, and shall be secured and be issued upon such terms and conditions as such Office may prescribe.

**(d)ADDITIONAL OR SUBSTITUTED COLLATERAL ON ADJUSTMENT OF EQUITIES**

The Director shall have full power to require any Federal Home Loan Bank to deposit additional collateral or to make substitutions of collateral or to adjust equities between the Federal Home Loan Banks.

**(e)ACCEPTANCE OF DEPOSITS; RESTRICTIONS ON TRANSACTION OF BANKING BUSINESS; COLLECTION AND SETTLEMENT OF CHECKS, DRAFTS, ETC.; CHARGES; RULES AND REGULATIONS**

**(1)**

Each Federal Home Loan Bank shall have power to accept deposits made by members of such bank or by any other Federal Home Loan Bank or other instrumentality of the United States, upon such terms and conditions as the Director may prescribe, but no Federal Home Loan Bank shall transact any banking or other business not incidental to activities authorized by this chapter.

**(2)**

**(A)**

The Director may, subject to such rules and regulations, including definitions of terms used in this paragraph, as the Director shall from time to time prescribe, authorize Federal Home Loan Banks to be drawees of, and to engage in, or be agents or intermediaries for, or otherwise participate or assist in, the collection and settlement of (including presentment, clearing, and payment of, and remitting for), checks, drafts, or any other negotiable or nonnegotiable items or instruments of payment drawn on or issued by members of any Federal Home Loan Bank or by institutions which are eligible to make application to become members pursuant to section 1424 of this title, and to have such incidental powers as the Director shall find necessary for the exercise of any such authorization.

**(B)**

A Federal Home Loan Bank shall make charges, to be determined and regulated by the Director consistent with the principles set forth in section 248a(c) of this title, or utilize the services of, or act as agent for, or be a member of, a Federal Reserve bank, clearinghouse, or any other public or private financial institution or other agency, in the exercise of any powers or functions pursuant to this paragraph.

**(C)**

The Director is authorized, with respect to participation in the collection and settlement of any items by Federal Home Loan Banks, and with respect to the collection and settlement (including payment by the payor institution) of items payable by Federal savings and loan associations and Federal mutual savings banks, to prescribe rules and regulations regarding the rights, powers, responsibilities, duties, and liabilities, including standards relating thereto, of

such Federal Home Loan Banks, associations, or banks and other parties to any such items or their collection and settlement. In prescribing such rules and regulations, the Director may adopt or apply, in whole or in part, general banking usage and practices, and, in instances or respects in which they would otherwise not be applicable, Federal Reserve regulations and operating letters, the Uniform Commercial Code, and clearinghouse rules.

**(f)REDISCOUNT OF NOTES HELD BY OTHER BANKS; PURCHASE OF BONDS OF OTHER BANKS**

The Director is authorized and empowered to permit or to require Federal Home Loan Banks, upon such terms and conditions as the Director may prescribe, to rediscount the discounted notes of members held by other Federal Home Loan Banks, or to make loans to, or make deposits with, such other Federal Home Loan Banks, or to purchase any bonds or debentures issued under this section.

**(g)RESERVES**

Each Federal Home Loan Bank shall at all times have at least an amount equal to the current deposits received from its members invested in (1) obligations of the United States, (2) deposits in banks or trust companies, (3) advances with a maturity of not to exceed five years which are made to members, upon such terms and conditions as the Director may prescribe, and (4) advances with a maturity of not to exceed five years which are made to members whose creditor liabilities (not including advances from the Federal home loan bank) do not exceed 5 per centum of their net assets, and which may be made without the security of home mortgages or other security, upon such terms and conditions as the Director may prescribe.

**(h)INVESTMENT OF SURPLUS FUNDS**

Such part of the assets of each Federal Home Loan Bank (except reserves and amounts provided for in subsection (g)) as are not required for advances to members, may be invested, to such extent as the bank may deem desirable and subject to such regulations, restrictions, and limitations as may be prescribed by the Director, in obligations of the United States, in obligations, participations, or other instruments of or issued by the Federal National Mortgage Association or the Government National Mortgage Association, in mortgages, obligations, or other securities which are or ever have been sold by the Federal Home Loan Mortgage Corporation pursuant to section 1454 or section 1455 of this title, in the stock of the Federal National Mortgage Association, in stock, obligations, or other securities of any small business investment company formed pursuant to section 681 of title 15, for the purpose of aiding members of the Federal Home Loan Bank System, and in such securities as fiduciary and trust funds may be invested in under the laws of the State in which the Federal Home Loan Bank is located.

**(i)TREASURY PURCHASE OF BANKS' OBLIGATIONS; EXERCISE OF AUTHORITY**

The Secretary of the Treasury is authorized in his discretion to purchase any obligations issued pursuant to this section, as heretofore, now, or hereafter in force and for such purpose the Secretary of the Treasury is authorized to use as a public-debt transaction the proceeds of the sale of any securities hereafter issued under chapter 31 of title 31, as now or hereafter in force, and the purposes for which securities may be issued under chapter 31 of title 31, as now or hereafter in force, are extended to include such purchases. The Secretary of the Treasury may, at any time, sell, upon such terms and conditions and at such price or prices as he shall determine, any of the obligations acquired by him under this subsection. All redemptions, purchases, and sales by the Secretary of the Treasury of such obligations under this subsection shall be treated as public-debt transactions of the United States. The Secretary of the Treasury shall not at any time purchase any obligations under this paragraph if such purchase would increase the aggregate principal amount of his then outstanding holdings of such obligations under this paragraph to an amount greater than $4,000,000,000. Each purchase of obligations by the Secretary of the Treasury under this subsection shall be upon terms and conditions as shall be determined by the Secretary of the Treasury and shall bear such rate of interest as may be determined by the Secretary of the Treasury taking into consideration the current average market yield for the month preceding the month of such purchase on outstanding marketable obligations of the United States.

In addition to obligations authorized to be purchased by the preceding paragraph, the Secretary of the Treasury is authorized to purchase any obligations issued pursuant to this section in amounts not to exceed $2,000,000,000. The authority provided in this paragraph shall expire August 10, 1975.

Notwithstanding the foregoing, the authority provided in this subsection may be exercised during any calendar quarter beginning after October 28, 1974, only if the Secretary of the Treasury and the Chairperson of the Director [1] certify to the Congress that (1) alternative means cannot be effectively employed to permit members of the Federal Home Loan Bank System to continue to supply reasonable amounts of funds to the mortgage market, and (2) the ability to supply such funds is substantially impaired because of monetary stringency and a high level of interest rates. Any funds borrowed under this subsection shall be repaid by the Home Loan Banks at the earliest practicable date.

**(j)AUDITS**

Notwithstanding the provisions of section 9105(a)(1)(B) [2] of title 31, audits by the Government Accountability Office of the financial transactions of a Federal

Home Loan Bank shall not be limited to periods during which Government capital has been invested therein. The provisions of sections 9107(c)(2) and 9108(d)(1) of title 31 shall not apply to any Federal Home Loan Bank.

### (k)BANK LOANS TO THE DEPOSIT INSURANCE FUND
### (1)LOANS AUTHORIZED

Subject to paragraph (3), the Federal Home Loan Banks may, upon the request of the Federal Deposit Insurance Corporation, make loans to such Corporation for the use of the Deposit Insurance Fund.

### (2)LIABILITY OF THE FUND

Any loan by a Federal Home Loan Bank pursuant to paragraph (1) shall be a direct liability of the Deposit Insurance Fund.

### (3)INTEREST ON AND SECURITY FOR SUCH LOANSAny loan by a Federal Home Loan Bank pursuant to paragraph (1) shall—
### (A)

bear a rate of interest not less than such Bank's current marginal cost of funds, taking into account the maturities involved; and

### (B)

be adequately secured.

### (l)TEMPORARY AUTHORITY OF TREASURY TO PURCHASE OBLIGATIONS; CONDITIONS
### (1)AUTHORITY TO PURCHASE
### (A)General authority

In addition to the authority under subsection (i) of this section, the Secretary of the Treasury is authorized to purchase any obligations issued by any Federal Home Loan Bank under any section of this chapter, on such terms and conditions as the Secretary may determine and in such amounts as the Secretary may determine. Nothing in this subsection requires a Federal Home Loan Bank to issue obligations or securities to the Secretary without mutual agreement between the Secretary and the Federal Home Loan Bank. Nothing in this subsection permits or authorizes the Secretary, without the agreement of the Federal Home Loan Bank, to engage in open market purchases of the common securities of any Federal Home Loan Bank.

### (B)Emergency determination requiredIn connection with any use of this authority, the Secretary must determine that such actions are necessary to—
### (i)

provide stability to the financial markets;

### (ii)

prevent disruptions in the availability of mortgage finance; and

### (iii)

protect the taxpayer.

**(C)Considerations**To protect the taxpayers, the Secretary of the Treasury shall take into consideration the following in connection with exercising the authority contained in this paragraph:

**(i)**

The need for preferences or priorities regarding payments to the Government.

**(ii)**

Limits on maturity or disposition of obligations or securities to be purchased.

**(iii)**

The Federal Home Loan Bank's plan for the orderly resumption of private market funding or capital market access.

**(iv)**

The probability of the Federal Home Loan Bank fulfilling the terms of any such obligation or other security, including repayment.

**(v)**

The need to maintain the Federal Home Loan Bank's status as a private shareholder-owned company.

**(vi)**

Restrictions on the use of Federal Home Loan Bank resources, including limitations on the payment of dividends and executive compensation and any such other terms and conditions as appropriate for those purposes.

**(D)Reports to Congress**

Upon exercise of this authority, the Secretary shall report to the Committees on the Budget, Financial Services, and Ways and Means of the House of Representatives and the Committees on the Budget, Finance, and Banking, Housing, and Urban Affairs of the Senate as to the necessity for the purchase and the determinations made by the Secretary under subparagraph (B) and with respect to the considerations required under subparagraph (C), and the size, terms, and probability of repayment or fulfillment of other terms of such purchase.

**(2)Rights; sale of obligations and securities**
**(A)Exercise of rights**

The Secretary of the Treasury may, at any time, exercise any rights received in connection with such purchases.

**(B)Sale of obligations**

The Secretary of the Treasury may, at any time, subject to the terms of the security or otherwise upon terms and conditions and at prices determined by the Secretary, sell any obligation acquired by the Secretary under this subsection.

**(C)Deficit reduction**The Secretary of the Treasury shall deposit in the General Fund of the Treasury any amounts received by the Secretary from the sale of any obligation acquired by the Secretary under this subsection, where such amounts shall be—

**(i)**

dedicated for the sole purpose of deficit reduction; and

**(ii)**

prohibited from use as an offset for other spending increases or revenue reductions.

**(D)Application of sunset to purchased obligations**

The authority of the Secretary of the Treasury to hold, exercise any rights received in connection with, or sell, any obligations purchased is not subject to the provisions of paragraph (4).

**(3)FUNDING**

For the purpose of the authorities granted in this subsection, the Secretary of the Treasury may use the proceeds of the sale of any securities issued under chapter 31 of title 31, and the purposes for which securities may be issued under chapter 31 of title 31 are extended to include such purchases and the exercise of any rights in connection with such purchases. Any funds expended for the purchase of, or modifications to, obligations and securities, or the exercise of any rights received in connection with such purchases under this subsection shall be deemed appropriated at the time of such purchase, modification, or exercise.

**(4)TERMINATION OF AUTHORITY**

The authority under this subsection (l), with the exception of paragraphs (2) and (3) of this subsection, shall expire December 31, 2009.

**(5)AUTHORITY OF THE DIRECTOR WITH RESPECT TO EXECUTIVE COMPENSATION**

The Director shall have the power to approve, disapprove, or modify the executive compensation of the Federal Home Loan Bank, as defined under Regulation S-K, 17 C.F.R. 229.

Executive Office(Mail Code OH4-7120)
3415 Vision Drive
Columbus OH 43219

00008 MLP 703 003 21622 NNNNNNNNNNNN EX166
**DAYNA SPANN**
NICOSHALMAR JAMES SPANN
3936 JUANITA MAY AVE
NORTH LAS VEGAS NV  89032

August 04, 2022



**Executive Office (Mail Code OH4-7120)**
3415 Vision Drive
Columbus, OH 43219

August 4, 2022

Dayna Spann
Nicoshalmar James Spann
3936 Juanita May Ave.
North Las Vegas, NV 89032

**Your mortgage loan agreement is a legal obligation**

Customer Names:   Dayna Spann and Nicoshalmar James Spann
Account:          ******2200
Reference Number: ECW220725-07640
Property Address: 3936 Juanita May Ave.
                  North Las Vegas, NV 89032

Dear Dayna Spann and Nicoshalmar James Spann:

We are responding to your inquiry about accepting signed coupon as payment for your loan. We appreciate the opportunity to assist you.

We reviewed your account and confirm your loan is valid. For your reference and convenience, we enclosed your:
- Note
- Deed of Trust
- Uniform Residential Loan Application
- HUD-1 Settlement Statement
- Loan Payment History

We enclosed a copy of the Note you signed at the origination of your loan as well as the Deed of Trust, Uniform Residential Loan Application, HUD-1, and Loan Payment History. These documents establish that you have undertaken a valid, binding and legally enforceable credit obligation.

**Here's the current status of your loan account**
Your loan payment is due for the July 2022 payment along with all subsequent payments and applicable fees. If you have already made the past-due payment, please disregard this notice.

If you have questions, please call us at 1-800-848-9136 Monday through Friday from 8 a.m. to 8 p.m. and Saturday from 9 a.m. to 6 p.m. Eastern Time. If you still need help, our office is available Monday through

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-877-805-8049, de lunes a viernes de 8 a.m. a 9 p.m. y sábados de 9 a.m. a 6 p.m., hora del Este.

## Important Legal Information

This is not an attempt to collect a debt; this is a response to a customer inquiry.

## Information for Servicemembers and their Dependents

If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from foreclosure or eviction, and in some cases, interest rate benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, some states allow for a payment deferral if certain conditions are met.

For more information, please call Chase Military Services at 1-877-469-0110.

ID HPSumAelRk
EX166

LOAN #: 000909924
MIN: 1000317-0000820240-6

# NOTE

September 29, 2018
[Date]

Las Vegas,
[City]

Nevada
[State]

3936 Juanita May Avenue, North Las Vegas, NV 89032
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $216,816.00     (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  SecurityNational Mortgage Company.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of  5.990 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st        day of each month beginning on  November 1, 2018.
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal. If, on  October 1, 2048,        I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  5300 South 360 West, Suite 150
Murray, UT 84123

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.  $1,298.53.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply
my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to
reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in
the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any

LOAN #: 000909924

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of   15            calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

F3200NOT  0107
F3200NOT (CLS)
09/28/2018 09:58 AM PST

LOAN #: 000909924

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DAYNA M HOLMAN

_____ (Seal)
NICOSHAWAR JAMES SPANN

Lender: SecurityNational Mortgage Company
NMLS ID: 3116
Loan Originator: Sal Quezada
NMLS ID: 340545

Pay to the order of                         Wells Fargo Bank, N.A;

without recourse
SecurityNational Mortgage Company

Michael D. Millbrook
Vice President of Servicing and Auditing

Pay To The Order Of
JP Morgan Chase Bank, NA
Without Recourse

SecurityNational Mortgage Company

Carlos Munoz, AVP
Texas Capital Bank, NA
As Attorney-In-Fact

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY
JACKIE S. MUELLER, SENIOR VICE PRESIDENT
009

Pay to the Order of

Without Recourse
JPMorgan Chase Bank, N.A.

By:
Tara Floyd, Assistant Secretary



When recorded, return to:
SecurityNational Mortgage Company
Attn: Final Document Department
5300 South 360 West, Suite 150
Murray, UT 84123

MAIL TAX STATEMENT TO:  SecurityNational Mortgage Company
5300 South 360 West, Suite 150, Murray, UT 84123

APN #: 139-07-810-229

Title Order No.: 300-182000577
Escrow No.: 300-182000577
LOAN #: 000909924

—————————————————— [Space Above This Line For Recording Data] ——————————————————

# DEED OF TRUST

| MIN  1000317-0000820240-6 |
| --- |
| MERS PHONE #: 1-888-679-6377 |

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  September 29, 2018,
together with all Riders to this document.
(B) "Borrower" is  DAYNA M HOLMAN, AN UNMARRIED WOMAN, AND NICOSHALMAR JAMES
SPANN, AN UNMARRIED MAN, AS JOINT TENANTS.

Borrower is the trustor under this Security Instrument.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3029 1/01
Ellie Mae, Inc.                              Page 1 of 14                    NVEDEDL  0315
                                                                             NVEDEDL (CLS)
                                                               09/28/2018 09:58 AM PST

(C) "Lender" is  SecurityNational Mortgage Company.

**LOAN #: 000909924**

Lender is  a Corporation,                                          organized and existing
under the laws of  Utah.                                           Lender's address is
5300 South 360 West, Suite 150, Murray, UT 84123.

(D) "Trustee" is DHI Title of Nevada, Inc.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  September 28, 2018. The Note states that Borrower owes Lender  TWO HUNDRED SIXTEEN THOUSAND EIGHT HUNDRED SIXTEEN AND NO/100************************************** Dollars (U.S. $216,816.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  October 1, 2048.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider              ☒ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ V.A. Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3029 1/01
Ellie Mae, Inc.                              Page 2 of 14                       NVEDEDL  0315
                                                                               NVEDEDL (CLS)
                                                                         09/28/2018 09:58 AM PST

| Seller | | Description | Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| | | County Property Taxes 4 mo(s) @$83.52/mo | 334.08 | |
| | | | | |
| | | **Title Charges & Escrow / Settlement Charges** | | |
| 1,209.00 | | Title – Owner's Title Insurance (optional) Eagle Policy-O to First American Title Insurance Company | | |
| | | Title – Lender's Policy ALTA Lenders 2006 to First American Title Insurance Company | 535.00 | |
| | | Title – [ALTA 8.1-06 ] Environmental Protection Lien [ALTA 8.1-06 ] Environmental Protection Lien to First American Title Insurance Company | 25.00 | |
| | | Title – [ALTA 9.10-06] Restrictions, Encroachments, Minerals [ALTA 9.10-06] Restrictions, Encroachments, Minerals – Current Violations – Loan Policy to First American Title Insurance Company | 25.00 | |
| | | Title – Closing Protection Letter Closing Protection Letter to First American Title Insurance Company | 25.00 | |
| | | Title – e-Recording Fee – B e-Recording Fee – B to First American Title Insurance Company | 10.00 | |
| 297.50 | | Title – Escrow Fee Escrow Fee – General to First American Title Insurance Company | 447.50 | |
| 25.00 | | Title – Holding Fee Holding Fee to First American Title Insurance Company | | |
| | | | | |
| | | **Commission** | | |
| 6,840.00 | | Real Estate Commission to Barrett & Co | | |
| 5,700.00 | | Real Estate Commission to Nevada Realty Connection | | |
| | | | | |
| | | **Government Recording and Transfer Charges** | | |
| | | Record Deed Grant Deed to Clark County Recorder | 40.00 | |
| | | Record First Deed of Trust Deed of Trust–First to Clark County Recorder | 40.00 | |
| | | County Documentary Transfer Tax Real Property Transfer Tax-County to Clark County Recorder | 1,162.80 | |
| | | | | |
| | | **Payoff(s) and Payment(s)** | | |
| | | Quicken Loans | | |
| 114,679.32 | | Principal Balance to Quicken Loans | | |
| 24.26 | | Interest on Payoff Loan 07/04/18 to 07/05/18 @$12.130000/day to Quicken Loans | | |
| | | | | |
| | | **Miscellaneous** | | |
| | | Association Dues-Advanced to Mesa Verde Homeowners Association | 132.00 | |
| 66.00 | | Seller Balance Due to Mesa Verde Homeowners Association | | |
| 250.00 | | Transfer Fee to Terra West | | |
| | | Home Warranty to First American Home Warranty | 375.00 | |
| | | Homeowner's Insurance Premium to AmeriSent Insurance | 453.00 | |
| | | Transaction Fee to Nevada Realty Connection | 395.00 | |
| 395.00 | | Transaction Fee to Barrett & Co | | |

| Seller | | Description | Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| 375.99 | | 1st Qtr 2018-19 Taxes (ESTIMATE) to Clark County Treasurer Office | | |
| 250.00 | | Sewer to Republic Services of Southern Nevada | | |
| | | | | |
| 130,577.07 | 228,266.98 | Subtotals | 235,904.45 | 237,141.09 |
| | | Due To Buyer | 1,236.64 | |
| 97,689.91 | | Due To Seller | | |
| 228,266.98 | 228,266.98 | Totals | 237,141.09 | 237,141.09 |



Escrow Officer: Laura Maynulet

This is a summary of the closing transaction prepared by First American Title Insurance Company. This document is not intende d to replace the Closing Disclosure form.

Copyright 2015 American Land Title Association.
All rights reserved

File # 107-2546177
Printed on 06/29/2018 at 9:25 AM

# CHASE

**Account Information**

**NAME:** DAYNA SPANN
NICOSHA/MAR JAMES SPANN

**LOAN:** 1317022200

Beginning Principal & Int: $1,598.53
Beginning Principal Balance: $216,982.40
Beginning Escrow Balance: $0.00
Beginning Interest Rate: 5.990%

** While the transactions indicated are based on your loan's history, this is not your complete history. It has been prepared as a courtesy to you to better understand your account, and contains selected items to assist in that understanding.

| Date | Post Date | Transaction | Total Payment | Principal | Interest | Principal Balance | Escrow | Escrow Balance | Late Charge | Late Charge Balance | Unapplied | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/01/19 | 12/08/18 | NEW LOAN SET UP | $0.00 | | | $216,982.40 | | $0.00 | | $0.00 | | $0.00 |
| | 12/04/18 | ESCROW PAYMENT | $924.06 | | | $216,982.40 | $924.06 | $924.06 | | $0.00 | | $0.00 |
| 01/01/19 | 01/02/19 | PAYMENT | $1,584.05 | $218.42 | $1,080.11 | $216,763.98 | $285.52 | $1,209.58 | | $0.00 | | $0.00 |
| 02/01/19 | 02/01/19 | PAYMENT | $1,584.05 | $219.51 | $1,079.02 | $216,544.47 | $285.52 | $1,495.10 | | $0.00 | | $0.00 |
| 02/01/19 | 02/22/19 | COUNTY TAX | ($41.29) | | | $216,544.47 | ($41.29) | $1,453.81 | | $0.00 | | $0.00 |
| | 02/22/19 | DELINQUENT BASE TAX | ($727.41) | | | $216,544.47 | ($727.41) | $726.40 | | $0.00 | | $0.00 |
| 02/22/19 | 02/22/19 | DISBURSEMENT TO MORTGAGOR | ($3,300.00) | | | $216,544.47 | ($3,300.00) | ($2,573.60) | | $0.00 | | $0.00 |
| 03/01/19 | 03/04/19 | PAYMENT | $1,584.05 | $220.61 | $1,077.92 | $216,323.86 | $285.52 | ($2,288.08) | | $0.00 | | $0.00 |
| 04/01/19 | 04/09/19 | PAYMENT | $1,353.96 | $221.71 | $1,076.82 | $216,102.15 | $55.43 | ($2,232.65) | | $0.00 | | $0.00 |
| 05/01/19 | 05/15/19 | PAYMENT | $1,353.96 | $222.82 | $1,075.71 | $215,879.33 | $55.43 | ($2,177.22) | | $0.00 | | $0.00 |
| 06/01/19 | 06/15/19 | PAYMENT | $1,353.96 | $223.93 | $1,074.60 | $215,655.40 | $55.43 | ($2,121.79) | | $0.00 | | $0.00 |
| 07/01/19 | 07/15/19 | PAYMENT | $1,353.96 | $225.05 | $1,073.48 | $215,430.35 | $55.43 | ($2,066.36) | | $0.00 | | $0.00 |
| 08/01/19 | 08/06/19 | COUNTY TAX | ($727.41) | | | $215,430.35 | ($727.41) | ($2,793.77) | | $0.00 | | $0.00 |
| 08/01/19 | 08/06/19 | PAYMENT | $1,353.96 | $226.17 | $1,072.36 | $215,204.18 | $55.43 | ($2,738.34) | | $0.00 | | $0.00 |
| 09/01/19 | 09/04/19 | ESCROW PAYMENT | $1,300.00 | | | $215,204.18 | $1,300.00 | ($1,438.34) | | $0.00 | | $0.00 |
| 09/01/19 | 09/13/19 | PAYMENT | $1,353.96 | $227.30 | $1,071.23 | $214,976.88 | $55.43 | ($1,382.91) | | $0.00 | | $0.00 |
| 09/01/19 | 09/17/19 | HOMEOWNERS INSURANCE | ($489.00) | | | $214,976.88 | ($489.00) | ($1,871.91) | | $0.00 | | $0.00 |
| 09/01/19 | 09/25/19 | COUNTY TAX | ($675.56) | | | $214,976.88 | ($675.56) | ($2,547.47) | | $0.00 | | $0.00 |
| 10/01/19 | 10/18/19 | PAYMENT | $1,353.96 | $228.43 | $1,070.10 | $214,748.45 | $55.43 | ($2,492.04) | | $0.00 | | $0.00 |
| 11/01/19 | 11/26/19 | PAYMENT | $1,630.71 | $229.57 | $1,068.96 | $214,518.88 | $332.18 | ($2,159.86) | | $0.00 | | $0.00 |
| 12/01/19 | 12/18/19 | LATE CHARGE ASSESSED | ($64.93) | | | $214,518.88 | | ($2,159.86) | | $64.93 | | $0.00 |
| 12/01/19 | 12/17/19 | PAYMENT | ($700.03) | | | $214,518.88 | ($700.03) | ($2,859.89) | | $64.93 | | $0.00 |
| 12/01/19 | 12/18/19 | PAYMENT | $1,630.71 | $230.72 | $1,067.81 | $214,288.16 | $332.18 | ($2,527.71) | | $64.93 | | $0.00 |
| 01/01/20 | 12/18/19 | LATE CHARGE WAIVED | $64.93 | | | $214,288.16 | | ($2,527.71) | ($64.93) | $0.00 | | $0.00 |
| | 01/06/20 | HOMEOWNERS INSURANCE | ($901.00) | | | $214,288.16 | ($901.00) | ($3,428.71) | | $0.00 | | $0.00 |
| 01/01/20 | 01/11/20 | ESCROW PAYMENT | $981.00 | | | $214,288.16 | $981.00 | ($2,447.71) | | $0.00 | | $0.00 |
| | 01/16/20 | PAYMENT | $1,581.44 | $231.87 | $1,066.66 | $214,056.29 | $282.91 | ($2,164.80) | | $0.00 | | $0.00 |
| | 01/16/20 | COUNTY TAX | ($791.48) | | | $214,056.29 | ($791.48) | ($2,956.28) | | $0.00 | | $0.00 |
| 02/01/20 | 02/14/20 | LATE CHARGE ASSESSED | ($64.93) | | | $214,056.29 | | ($2,956.28) | | $64.93 | | $0.00 |
| 02/01/20 | 02/19/20 | PAYMENT | $1,581.44 | $233.03 | $1,065.50 | $213,823.26 | $282.91 | ($2,673.37) | | $64.93 | | $0.00 |
| | 02/19/20 | LATE CHARGE WAIVED | $64.93 | | | $213,823.26 | | ($2,673.37) | ($64.93) | $0.00 | | $0.00 |
| 03/01/20 | 02/16/20 | LATE CHARGE ASSESSED | ($64.93) | | | $213,823.26 | | ($2,673.37) | | $64.93 | | $0.00 |
| 03/01/20 | 03/16/20 | LATE CHARGE WAIVED | $64.93 | | | $213,823.26 | | ($2,673.37) | ($64.93) | $0.00 | | $0.00 |
| 03/01/20 | 03/17/20 | PAYMENT | $1,581.44 | $234.19 | $1,064.34 | $213,589.07 | $282.91 | ($2,390.46) | | $0.00 | | $0.00 |
| 04/01/20 | 09/17/20 | LATE CHARGE WAIVED | $64.93 | | | $213,589.07 | | ($2,390.46) | ($64.93) | $0.00 | | $0.00 |
| 04/01/20 | 04/18/20 | PAYMENT | $1,581.44 | $235.36 | $1,063.17 | $213,353.71 | $282.91 | ($2,107.55) | | $0.00 | | $0.00 |
| 05/01/20 | 05/16/20 | PAYMENT | $1,581.44 | $236.53 | $1,062.00 | $213,117.18 | $282.91 | ($1,824.64) | | $0.00 | | $0.00 |

216535100118036000080200000020

| Due Date | Post Date | Transaction | Total Payment | Principal | Interest | Principal Balance | Escrow |
|---|---|---|---|---|---|---|---|
| 06/01/20 | 06/18/20 | PAYMENT | $1,581.44 | $237.72 | $1,060.81 | $212,279.46 | $282.91 |
| 07/01/20 | 07/18/20 | PAYMENT | $1,581.44 | $238.50 | $1,059.63 | $212,040.96 | $282.91 |
| 07/01/20 | 07/17/20 | COUNTY TAX | ($725.35) | | | $212,040.96 | ($725.35) |
| 08/01/20 | 08/18/20 | PAYMENT | $1,581.44 | $240.09 | $1,058.44 | $211,800.47 | $282.91 |
| 09/01/20 | 09/18/20 | PAYMENT | $1,581.44 | $241.29 | $1,057.24 | $211,559.18 | $282.91 |
| 09/01/20 | 09/22/20 | COUNTY TAX | ($722.94) | | | $211,559.18 | ($722.94) |
| 10/01/20 | 10/16/20 | PAYMENT | $1,581.44 | $242.50 | $1,056.03 | $211,316.68 | $282.91 |
| 10/01/20 | 10/16/20 | PRINCIPAL PAYMENT | $18.56 | $18.56 | | $211,298.12 | |
| 10/01/20 | 10/16/20 | LATE CHARGE ASSESSED | ($64.93) | | | $211,298.12 | |
| 11/01/20 | 11/17/20 | PAYMENT | $1,585.59 | $243.80 | $1,054.73 | $211,054.32 | $287.06 |
| | 11/17/20 | LATE CHARGE WAIVED | $64.93 | | | $211,054.32 | |
| | 11/30/20 | HOMEOWNERS INSURANCE | ($515.00) | | | $211,054.32 | ($515.00) |
| | 12/16/20 | LATE CHARGE ASSESSED | ($64.93) | | | $211,054.32 | |
| 12/01/20 | 12/17/20 | PAYMENT | $1,585.59 | $245.02 | $1,053.51 | $210,809.30 | $287.06 |
| | 12/17/20 | LATE CHARGE WAIVED | ($722.94) | | | $210,809.30 | ($722.94) |
| | 12/17/20 | COUNTY TAX | $64.93 | | | $210,809.30 | |
| | 02/16/21 | COUNTY TAX | ($722.94) | | | $210,809.30 | |
| | 09/03/21 | COUNTY TAX | ($347.67) | | | $210,809.30 | ($347.67) |
| | 09/21/21 | COUNTY TAX | ($744.63) | | | $210,809.30 | ($744.63) |
| | 11/30/21 | HOMEOWNERS INSURANCE | ($513.00) | | | $210,809.30 | ($513.00) |
| | 12/15/21 | COUNTY TAX | ($744.63) | | | $210,809.30 | ($744.63) |
| | 02/17/22 | COUNTY TAX | ($744.63) | | | $210,809.30 | ($744.63) |
| | 04/01/22 | PRINCIPAL AND INTEREST ADJUSTMENT | $4,625.49 | $4,625.49 | | $206,183.81 | |
| | 04/01/22 | PRINCIPAL AND INTEREST ADJUSTMENT | ($27,655.92) | ($27,655.92) | | $233,839.73 | |
| | 06/10/22 | CORPORATE ADVANCE PAID | $282.42 | | | $233,839.73 | $282.42 |
| | 06/10/22 | CORPORATE ADVANCE PAID | $999.99 | | | $233,839.73 | $999.99 |
| | 06/10/22 | CORPORATE ADVANCE PAID | $999.99 | | | $233,839.73 | $999.99 |
| | 06/10/22 | CORPORATE ADVANCE PAID | $999.99 | | | $233,839.73 | $999.99 |
| | 07/27/22 | COUNTY TAX | ($770.03) | | | $233,839.73 | ($770.03) |

| American Land Title Association | ALTA Settlement Statement – Combined |
|---|---|
| | Adopted 05-01-2015 |

| File No: 107-2546177 | First American Title Insurance Company | |
|---|---|---|
| Printed: 06/29/2018, 9:25 AM | | |
| Officer/Escrow Officer: Laura | 8311 West Sunset Road, Suite 150 • Las Vegas, NV 89113 | |
| Maynulet/cl | Phone: (702)263-1225  Fax: (866)387-4685 | |
| Settlement Location: | Final Settlement Statement | |
| 8311 West Sunset Road, Suite 150, Las | | |
| Vegas, NV 89113 | | |

Property Address: 4036 Thomas Patrick Avenue, North Las Vegas, NV 89032
Buyer: Timothy Johnson; Ashley Padilla
Seller: Dayna Holman
Lender: Fairway Independent Mortgage Corporation ISAOA/ATIMA
Settlement Date: 06/28/2018
Disbursement Date: 06/28/2018

WE HEREBY CERTIFY THIS IS A
FULL, TRUE AND CORRECT COPY
OF THE ORIGINAL.
First American Title Company
By

| Seller | | Description | Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Financial** | | |
| | 228,000.00 | Sale Price | 228,000.00 | |
| | | Deposit:  Receipt No. 525138556 on 06/18/2018 by Timothy Johnson / Ashley Padilla | | 2,000.00 |
| | | Loan Amount - Fairway Independent Mortgage Corporation ISAOA/ATIMA | | 213,750.00 |
| | | | | |
| | | **Prorations/Adjustments** | | |
| | 6.60 | Association Dues  06/28/18 to 07/01/18 @$66.00/mo | 6.60 | |
| | 260.38 | County Taxes  06/28/18 to 10/01/18 @$1,000.42/yr | 260.38 | |
| | | eHousing DPA Grant | | 20,000.00 |
| | | | | |
| | | **Loan Charges** | | |
| | | Loan Charges to Fairway Independent Mortgage Corporation ISAOA/ATIMA | | |
| | | Prepaid Interest  06/28/18 to 07/01/18 @$29.280000/day | 87.84 | |
| | | Administration Fee | 275.00 | |
| | | Origination Fee | 1,068.75 | |
| | | Fixed Loan Fee | 1,550.00 | |
| | | Funding Fee | 400.00 | |
| | | Appraisal Fee to Accelerated Appraisal          POC-B $375.00 | | |
| | | Credit Report to Advantage Credit | 133.50 | |
| | | Flood Certification to FLS | 9.75 | |
| | | Appraisal Admin Fee to FLS          POC-B $120.00 | | |
| | | Good Faith Variance Cure | | 1,186.30 |
| | | | | |
| | | Impounds | | |

ULI: 649300VQUTISIU7GXT6700090092495

# Demographic Information Addendum. This section asks about your ethnicity, sex and race.

### Demographic Information of Borrower

The purpose of collecting this information is to help ensure that all the applicants are treated fairly and that the housing needs of communities and neighborhoods are being fulfilled. For residential mortgage lending, Federal law requires that we ask applicants for their demographic information (ethnicity, sex, and race) in order to monitor our compliance with equal credit opportunity, fair housing, and home mortgage disclosure laws. You are not required to provide this information, but are encouraged to do so. You may select one or more designations for "Ethnicity" and one or more designations for "Race." The law provides that we may not discriminate on the basis of this information, or on whether you choose to provide it. However, if you choose not to provide the information and you have made this application in person, Federal regulations require us to note your ethnicity, sex, and race on the basis of visual observation or surname. The law also provides that we may not discriminate on the basis of age or marital status information you provide in this application. If you do not wish to provide some or all of this information, please check below.

**Ethnicity:** *Check one or more*

☐ Hispanic Or Latino
   ☐ Mexican   ☐ Puerto Rican   ☐ Cuban
   ☐ Other Hispanic or Latino – *Print origin:*

   *For example: Argentinean, Colombian, Dominican, Nicaraguan,*
   *Salvadoran, Spaniard, and so on.*
☒ Not Hispanic or Latino
☐ I do not wish to provide this information

**Sex**

☒ Female
☐ Male
☐ I do not wish to provide this information

**Race:** *Check one or more*

☐ American Indian or Alaska Native – *Print name of enrolled*
   *or principal tribe:*
☐ Asian
   ☐ Asian Indian  ☐ Chinese    ☐ Filipino
   ☐ Japanese   ☐ Korean    ☐ Vietnamese
   ☐ Other Asian – *Print Race:*
   *For example: Hmong, Laotian, Thai, Pakistani, Cambodian, and*
   *so on.*
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
   ☐ Native Hawaiian ☐ Guamanian or Chamorro ☐ Samoan
   ☐ Other Pacific Islander – *Print race:*

   *For example: Fijian, Tongan, and so on.*
☒ White
☐ I do not wish to provide this information

### To Be Completed by Financial Institution (for application taken in person):

| | NO | YES |
|---|---|---|
| Was the ethnicity of the Borrower collected on the basis of visual observation or surname? | ○ NO | ○ YES |
| Was the sex of the Borrower collected on the basis of visual observation or surname? | ○ NO | ○ YES |
| Was the race of the Borrower collected on the basis of visual observation or surname? | ○ NO | ○ YES |

### The Demographic Information was provided through:

○ Face-to-Face Interview (includes Electronic Media w/ Video Component) ◉ Telephone Interview ○ Fax or Mail ○ Email or Internet

Borrower Name: Dayna M Holman
Uniform Residential Loan Application
Freddie Mac Form 65 • Fannie Mae Form 1003
*Revised 09/2017*

GURLADI_S   1017

## CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| | Borrower: Dayna M Holman | Agency Case Number: |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Co-Borrower: | Lender Case Number: 000909924 |

**FORMER ADDRESS CONTINUED**

BORROWER                                     CO-BORROWER

Own 3Y 10M
4036 Thomas Patrick Ave, N Las Vegas, NV 89032

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et. seq.

ULI: 649300VQUTISIU7GXT870002809824B5    LOAN #: 000009924

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

## VII. DETAILS OF TRANSACTION

| a. Purchase price | $ | 271,020.00 |
|---|---|---|
| b. Alterations, improvements, repairs | | |
| c. Land (if acquired separately) | | |
| d. Refinance (incl. debts to be paid off) | | |
| e. Estimated prepaid items | | 810.31 |
| f. Estimated closing costs | | 6,616.48 |
| g. PMI, MIP, Funding Fee | | |
| h. Discount (if Borrower will pay) | | |
| i. Total costs (add items a through h) | | 278,446.79 |
| j. Subordinate financing | | |
| k. Borrower's closing costs paid by Seller | | |
| l. Other Credits (explain) | | |
| Cash Deposit on sales contract | | 3,050.00 |
| Other | | 200.00 |
| Title Policy Credit | | 903.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | | 210,616.00 |
| n. PMI, MIP, Funding Fee financed | | |
| o. Loan amount (add m & n) | | 210,616.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | | 57,529.79 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

|  | Borrower | Co-Borrower |
|---|---|---|
|  | Yes No | Yes No |
| a. Are there any outstanding judgments against you? | | |
| b. Have you been declared bankrupt within the past 7 years? | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | |
| d. Are you a party to a lawsuit? | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | |
| h. Is any part of the down payment borrowed? | | |
| i. Are you a co-maker or endorser on a note? | | |
| j. Are you a U.S. citizen? | | |
| k. Are you a permanent resident alien? | | |
| l. Do you intend to occupy the property as your primary residence? | | |
| m. Have you had an ownership interest in a property in the last three years? | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application...

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 9/29/18 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| Ethnicity: | | Ethnicity: | |
| Race: | | Race: | |
| Sex: | | Sex: | |

This information was provided:

| Loan Originator's Signature | | Date |
|---|---|---|
| X | | 9-29-18 |

| Loan Originator's Name (print or type) | Loan Originator Identifier | Loan Originator's Phone Number (including area code) |
|---|---|---|
| Sid Quezada | 340546 / State License #: 9814 | 702-487-5826 |

| Loan Origination Company's Name | Loan Origination Company Identifier | Loan Origination Company's Address |
|---|---|---|
| SecurityNational Mortgage Company | 3116 / State License #: 3697 | 2370 Corporate Circle Suite 200, Henderson, NV 89074 |

Uniform Residential Loan Application
Freddie Mac Form 65  7/05 (rev.6/09)    Fannie Mae Form 1003  7/05 (rev.6/09)
Ellie Mae, Inc.    GCLRA1BD3   0518
GURLA(CLS)
09/29/2018 02:28 AM PST

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 3,216.00 | $ | $ | 3,216.00 | Rent | $ | |
| Overtime | | | | | First Mortgage (P&I) | | $ 1,268.53 |
| Bonuses | | | | | Other Financing (P&I) | | |
| Commissions | | | | | Hazard Insurance | | 39.67 |
| Dividends/Interest | | | | | Real Estate Taxes | | 225.65 |
| Net Rental Income | | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | | Homeowner Assn. Dues | | 66.00 |
| | | | | | Other: | | |
| Total | $ 3,216.00 | $ | $ 3,216.00 | Total | $ | $ 1,930.05 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| Describe Other Income | Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| B/C | | $ |
| | | |
| | | |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.   Completed ☐ Jointly ☐ Not Jointly

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description | | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| Cash Deposit toward purchase held by: | $ | | | |
| | | Name and address of Company (B1) SILVER STATE SCHOOLS C 4221 S MCLEOD DR. LAS VEGAS, NV 89121 | $ Pmt./Mos. 454.00 / 80 | $ 31,832.00 |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union Bank of America | | Acct. no. 2326920001 | | |
| | | Name and address of Company (B1) CHRYSLER CAPITAL PO BOX 961276, FORT WORTH, TX 76161 | $ Pmt./Mos. (608.00) / 51 | $ (30,151.00) |
| Acct. no. 501005213702 | $ 1,073.93 | | | |
| Name and address of Bank, S&L, or Credit Union Bank of America | | Acct. no. 50000135915041000 | | |
| | | Name and address of Company (B1) DISCOVER BANK 502 E MARKET ST, GREENWOOD, DE 19950 | $ Pmt./Mos. *_/_ | $ *9,547.46 |
| Acct. no. 501005215878 | $ 71,600.39 | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. 500002955513 | | |
| | | Name and address of Company (B1) BK OF AMER PO BOX 982235, EL PASO, TX 79998 | $ Pmt./Mos. *_/_ | $ *4,543.61 |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. 440006929949192 | | |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Life insurance net cash value Face amount: $ | $ | | | |
| Subtotal Liquid Assets | $ 73,474.32 | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Name and address of Company | $ Pmt./Mos. | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. | | |
| Automobiles owned (make and year) | $ | | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 454.00 | |
| Total Assets a. | $ 73,474.32 | Net Worth (a minus b) | $ 28,351.25 | Total Liabilities b. $ 45,123.07 |

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_____    _____
Borrower                          Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☐ FHA | ☒ Conventional ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number 000009924 |
|---|---|---|---|---|---|
| Amount $ 210,816.00 | Interest Rate 5.990 % | No. of Months 360 | Amortization Type: | ☒ Fixed Rate ☐ GPM | ☐ Other (explain): ☐ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, & ZIP)                                  No. of Units
3336 Juanita May Avenue, North Las Vegas, NV 89033 County: Clark                        1
Legal Description of Subject Property (attach description if necessary)                 Year Built
CHEYENNE VALLEY INNOVATIVE RESORT COMMUNITIES PLAT BOOK 118 PAGE 37, LOT 223           2018

| Purpose of Loan | ☒ Purchase ☐ Construction | ☐ Construction ☐ Other (explain): ☐ Construction-Permanent | Property will be: ☒ Primary Residence | ☐ Secondary Residence | ☐ Investment |
|---|---|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| | $ | | | Cost: $ |

Title will be held in what name(s)                    Manner in which Title will be held     Estate will be held in:
Dayna M Holman, Moonshadow James Spann              Joint tenants                           ☒ Fee Simple
                                                                                             ☐ Leasehold
Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)            (show expiration date)
Checking/Savings-Checking/Savings

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Dayna M Holman | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 702-219-6749 | Home Phone (incl. area code) 702-219-6749 | DOB (MM/DD/YYYY) | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| ☐ Married ☒ Unmarried (include single, divorced, widowed) | | Dependents (not listed by Co-Borrower) no. 2 ages 2, 1 mo | | ☐ Married ☐ Unmarried (include single, divorced, widowed) | | Dependents (not listed by Borrower) no. ages | |
| ☐ Separated | | | | ☐ Separated | | | |

| Present Address (street, city, state, ZIP) ☐ Own ☒ Rent 0Y 9M No.Yrs. 125 E Regena Ave Apt 123 N Las Vegas, NV 86031 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No.Yrs. |
|---|---|
| Mailing Address, if different from Present Address 125 E Regena Ave Apt 123 N Las Vegas, NV 89031 | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☒ Rent 1Y No.Yrs. 9337 Hamreaen Hills Ave Las Vegas, NV 89149 | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No.Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer ☐ Self Employed State of Nevada (UMDS) 1785 E Sahara Ave Suite 145 Las Vegas, NV 89104 | Yrs. on this job 2 Y 1 M Yrs. employed in this line of work/profession 7 | Name & Address of Employer ☐ Self Employed | Yrs. on this job Yrs. employed in this line of work/profession |
| Position/Title/Type of Business Admin Asst 2 | Business Phone (incl. area code) 702-486-6400 | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)
Ellie Mae, Inc.

Fannie Mae Form 1003   7/05 (rev.6/09)
GURLA  0711
GURLA (CLS)
09/28/2018 09:59 AM PST

APN: 139-07-810-229

## NEVADA DEED OF TRUST COVER LETTER
### As prescribed in Nevada Revised Statute 239B.030

I hereby affirm that this document which has been submitted for recording does not contain any personal information, as defined by Nevada Revised Statutes 603A.040, about any person.

~~SecurityNational Mortgage Company~~   *DHI Title*
~~Carmen Broezell~~

APN: 139-07-810-229
Recording Requested By:
Name:  SecurityNational Mortgage Company
      Attn: Final Document Department

Address:  5300 South 360 West, Suite 150, Murray, UT 84123

---

### As prescribed in Nevada Revised Statutes 111.312 (5) and (6)

If the legal description of this real property is described in metes and bounds complete the following information:

Legal Description Prepared By:
Name:
Mailing Address:

If the same legal description has previously been recorded complete the following information:

Legal Description found in *See attached Exhibit A* document,
Book _____ ; Page _____ ; Number _____
Date Recorded _____ in the _____
office of the County Recorder.

Ellie Mae, Inc.

NVCOVERL  0713
NVCOVERL (CLS)
09/28/2016 09:58 AM PST

Inst #: 20181002-0002025
Fees: $40.00
10/02/2018 02:07:49 PM
Receipt #: 3527735
Requestor:
DHI TITLE OF NEVADA
Recorded By: GHSHD    Pgs: 19
DEBBIE CONWAY
CLARK COUNTY RECORDER
Src: ERECORD
Ofa: ERECORD

APN: 139-07-810-229

## NEVADA DEED OF TRUST COVER LETTER
### As prescribed in Nevada Revised Statute 239B.030

I hereby affirm that this document which has been submitted for recording does not contain any personal information, as defined by Nevada Revised Statutes 603A.040, about any person.

*Madena Bumpus*              *DHI Title*

SecurityNational Mortgage Company
Carmen Broszett

APN: 139-07-810-229
Recording Requested By:
Name: SecurityNational Mortgage Company
      Attn: Final Document Department

Address: 5300 South 360 West, Suite 150, Murray, UT 84123

---

As prescribed in Nevada Revised Statutes 111.312 (5) and (6)

If the legal description of this real property is described in metes and bounds complete the following information:

Legal Description Prepared By:
Name:
Mailing Address:

If the same legal description has previously been recorded complete the following information:

Legal Description found in *See attached Exhibit "A"* document,
Book _____; Page _____; Number _____;
Date Recorded _____ in the _____
office of the County Recorder.

Ellie Mae, Inc.                    NVCOVERL  0719
                                   NVCOVERL (CLS)
                                   09/28/2018 08:56 AM PST

**LOAN #: 000909924**

self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

 **F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____  9/29/18 (Seal)
DAYNA M HOLMAN                                                    DATE

_____  9/29/18 (Seal)
NICOSHALMAR JAMES SPANN                                DATE

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                                    Page 3 of 3                                    F3150RLU  0115
                                                                                                              F3150RLU (CLS)
                                                                                       09/28/2018 09:58 AM PST

LOAN #: 000909924

Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01

Ellie Mae, Inc.                                Page 2 of 3                                F3150RLU  0115
                                                                                          F3150RLU (CLS)
                                                                                          09/28/2018 09:58 AM PST

LOAN #: 000909924
MIN: 1000317-0000820240-6

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **29th** day of **September, 2018** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **SecurityNational Mortgage Company**

(the "Lender")
of the same date and covering the Property described in the Security Instrument and located at: **3936 Juanita May Avenue, North Las Vegas, NV 89032.**

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **COVENANTS, CONDITIONS AND RESTRICTIONS**

(the "Declaration").
The Property is a part of a planned unit development known as **Cheyenne Valley Innovative Resort Communities**
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
A.  PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                          Page 1 of 3                          F3150RLU  0115
F3150RLU (CLS)
09/28/2018 09:58 AM PST

LOAN #: 000909924

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the   County
[Type of Recording Jurisdiction] of   Clark                                            [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: 139-07-810-229

which currently has the address of   3936 Juanita May Avenue, North Las Vegas,
                                                                                                                [Street] [City]
Nevada  89032                                    ("Property Address"):
              [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3029 1/01
Ellie Mae, Inc.                                         Page 3 of 14                                        NVEDEDL   0315
                                                                                                            NVEDEDL (CLS)
                                                                                            09/28/2018 09:58 AM PST

LOAN #: 000909924

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien

LOAN #: 000909924

or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner

NEVADA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3029 1/01
Ellie Mae, Inc.                                Page 5 of 14                                NVEDEDL  0315
                                                                                          NVEDEDL (CLS)
                                                                                  09/28/2018 09:58 AM PST

LOAN #: 000909924

acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3029 1/01
Ellie Mae, Inc.

Page 6 of 14

NVEDEDL 0315
NVEDEDL (CLS)
09/28/2018 09:58 AM PST

LOAN #: 000909924

obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

LOAN #: 000909924

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement

LOAN #: 000909924

provided that an affiliate of Lender takes a share of the Insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's

LOAN #: 000909924

interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3029 1/01
Ellie Mae, Inc.                                        Page 10 of 14                                      NVEDEDL  0315
                                                                                                          NVEDEDL (CLS)
                                                                                                    09/26/2018 09:58 AM PST

LOAN #: 000909924

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured

LOAN #: 000909924

by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3029 1/01
Ellie Mae, Inc.                                    Page 12 of 14                                    NVEDEDL   0315
                                                                                                     NVEDEDL (CLS)
                                                                                          09/28/2018 09:58 AM PST

LOAN #: 000909924

of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3029 1/01
Ellie Mae, Inc.

Page 13 of 14

NVEDEDL  0315
NVEDEDL (CLS)
09/28/2018 09:58 AM PST

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

LOAN #: 000909924

_(signature)_              9/29/18 (Seal)
DAYNA M HOLMAN             DATE

_(signature)_              9·29·18 (Seal)
NICOSHALMAR JAMES SPANN        DATE

State of _NEVADA_
County of _CLARK_

This instrument was acknowledged before me on _9/29/2018_
(date) by DAYNA M HOLMAN AND NICOSHALMAR JAMES SPANN (name(s) of person(s)).

(Seal, if any)

_(Notary seal)_
MICHAEL L. FAST
Notary Public, State of Nevada
Appointment No. 15-3351-1
My Appt. Expires Dec 22, 2019

_(signature)_
(Signature of notarial officer)

Title (and rank): _NOTARY PUBLIC_

Lender: SecurityNational Mortgage Company
NMLS ID: 3116
Loan Originator: Sal Quezada
NMLS ID: 340546

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3029 1/01
Ellie Mae, Inc.           Page 14 of 14                NVEDEDL 0315
                                                   NVEDEDL (CLS)
                                     09/28/2018 09:58 AM PST

ESCROW NO.: 300-182000577                          APN: 139-07-810-229

## EXHIBIT A

Parcel 1:

Lot 223, final map of CHEYENNE VALLEY INNOVATIVE RESORT COMMUNITIES, as shown by
Plat thereof on file in Book 118 of Maps, Page 37, as amended by Certificate of Amendment
recorded September 20, 2004 in Book 20040920 as Document No. 00881, in the office of the
County Recorder of Clark County, Nevada.

Parcel 2:

A Non-Exclusive easement for use of and vehicular and pedestrian access over the private drives
in the common property in connection with use and enjoyment of each lot in the property as set
forth in that certain instrument entitled "Declaration of Covenants, Conditions, and Restrictions and
Reservation of Easements for Mesa Verde" recorded August 4, 2005 in Book 20050804 as
Document No. 01068, in the office of the County Recorder of Clark County, Nevada.



07883 **Page 1 of 2**

700 Kansas Lane
LA4-6633
Monroe, LA 71203

($) Thank you for your payment of
$1,617.30 on 02/09/2023.

Statement date 02/09/2023

| Payment due | Amount due |
|---|---|
| 03/01/2023 | $1,617.30 |

A late fee of $64.93 may apply if payment received after 03/16/2023.

07883 MSD Z 04029 C - BR2
DAYNA M SPANN
NICOSHALMAR JAMES SPANN
3936 JUANITA MAY AVE
NORTH LAS VEGAS NV 89032

*Accepted*
*2/18/2023*
*By: Spann; Nicoshalmar-James/agent*
*For: NICOSHALMAR SPANN*
*w/o recourse*
*By: Spann-Dayna-Marie/Agent*
*FOR: DAYNA SPANN*
*w/o Recourse*

## Mortgage Information

| | |
|---|---|
| Account number | 1317022200 |
| Property address | 3936 Juanita May Ave |
| | North Las Vegas, NV 89032 |
| Original principal balance | $216,816.00 |
| Unpaid principal balance¹ | $203,991.16 |
| Maturity date | 10/2048 |
| Deferred balance | $27,655.92 |
| Interest rate | 5.99000% |
| Escrow balance | ($343.98) |
| Corporate advance balance | $15.00 |

## Past payments breakdown

| | Paid since last statement | Paid year-to-date |
|---|---|---|
| Principal | $278.88 | $556.38 |
| Interest | $1,019.65 | $2,040.68 |
| Escrow | $318.77 | $637.54 |
| **Total** | **$1,617.30** | **$3,234.60** |

## Explanation of amount due

| | |
|---|---|
| Principal | $280.27 |
| Interest | $1,018.26 |
| Escrow | $318.77 |
| Total payment due on 03/01/2023 | $1,617.30 |

## Reminder

Your tax statement



Your tax statement(s) was mailed by January 31. If you chose paperless, please visit www.chase.com/TaxStatement to view.

## Chase MyHome℠



Your personalized mortgage dashboard - an in-depth view of your mortgage, your home and your neighborhood. Explore at www.chase.com/ChaseMyHome

## Ways to pay

Convenient and free ways to make your payment:

Enroll in automatic payments at www.chase.com or back of statement coupon.

Make your payment at www.chase.com

Pay by phone with our dedicated number at 1-833-PAY-CHASE (1-833-729-2427).

Mail your payment with the coupon below.

## Resources

(i) www.chase.com/MyMortgage

Call customer service 1-800-848-9136
(24/7 automated line)
Monday - Friday 8 a.m. - 8 p.m. (ET)
Saturday 9 a.m. - 6 p.m. (ET)

[Es] Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198 o visita www.chase.com/Statement



## Transaction activity

| Transaction date | Description | Total received | Principal | Interest | Escrow | Fees/ Advances | Unapplied funds |
|---|---|---|---|---|---|---|---|
| 02/09/2023 | PAYMENT | $1,617.30 | $278.88 | $1,019.65 | $318.77 | | |

## Additional information

The Corporate Advance Balance may be for funds we applied as a courtesy to make a full payment on your behalf. This may occur when we receive funds from you that are less than your payment amount.

Also, depending on the status of your account, it may cover inspections, home valuations, legal fees and costs, property maintenance, or other expenses. Your Corporate Advance Balance is listed under the Mortgage information section on this statement.

Unless you specify otherwise, we will apply funds received in excess of the payment due to additional periodic payments up to two months ahead. Any funds remaining after application of the periodic payments or any amount insufficient to make an additional payment will be applied to outstanding fees and advances, and then as a principal reduction. All principal reductions are applied after periodic payments are applied.

If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. These benefits and protections may include protection from foreclosure or eviction without a court order, and in some cases, interest rate and fee benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. In addition, some state laws may allow Servicemembers to request a payment deferral.

For more information, please call Chase Military Services at 1-877-469-0110.

## Contact Information and Disclosures

For all of our ways to contact us, please visit www.chase.com/Mortgage-Contact-Us

| **Customer Service Inquiries**<br>Chase<br>Mail Code LA4-6475<br>700 Kansas Lane<br>Monroe, LA 71203 | **Designated Address for Notices of Error, Information Requests, and Qualified Written Requests**<br>Chase<br>Mail Code LA4-6911<br>700 Kansas Lane<br>Monroe, LA 71203-4774 | **Insurance Bills & Policies**<br>www.MyCoverageInfo.com/chase<br>Email: chase@mycoverageinfo.com<br>Chase<br>P.O. Box 4465<br>Springfield, OH 45501<br>Fax: 1-678-475-8799<br>(Free of charge from any Chase branch) | **Overnight Payment**<br>Chase<br>ATTN: P.O. Box 78420<br>3137 East Elwood St.<br>Suite 130<br>Phoenix, AZ 85034 |

## Account Information Reported to Credit Bureau

We may report information about your Account to credit bureaus. Late payments, missed payments or other defaults on your Account may be reflected in your credit report. If you think we have reported inaccurate information to a credit bureau, please write to us at Chase Home Lending, Mail Code LA4-6945, 700 Kansas Lane, Monroe, LA 71203.

If you do not make your mortgage payment on time or request services from Chase, you may be charged fees. Those fees may include those shown in your loan documents, provided by law, or related to the services provided. The fee structure may change without notice except where prohibited by law. Other fees may be charged for services provided. Fees may not be applicable to certain products and may be limited by law.

## ¹Loan Payoff Information

The Unpaid Principal Balance on your statement is not a payoff quote. Payoff quotes are available by logging into your account on www.chase.com You can also request a quote anytime through our 24-hour automated phone service by calling 1-877-505-2894.

## Important Bankruptcy Information

If you or your account is subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge, this statement is for informational purposes only and is not an attempt to collect a debt.

## Homeowner Assistance

You can call the U.S. Department of Housing and Urban Development at 1-800-569-4287, or the U.S. Department of the Treasury-sponsored HOPE Hotline number at 1-888-995-HOPE (1-888-995-4673) to get free assistance, or visit www.HopeNow.com You can also find a nonprofit HUD-approved counselor who can provide the information and assistance you may need to avoid foreclosure by using the search tool at www.hud.gov/offices/hsg/sfh/hcc/fc/ These HUD-approved housing counseling agencies found on www.HUD.gov can also help you with your household budgeting at no charge. Additional educational resources are available via Fannie Mae's website at www.knowyouroptions.com

You may have the ability to apply for the Department of Treasury's Homeowner Assistance Fund (HAF), if HAF is available in your jurisdiction. If your state or jurisdiction offers HAF programs, you may contact those programs directly for more information, including how to apply.



0001317022002 313000 001b1730 001b1730 001b8223 001b1730 00008

Accepted 2|18|2023

Pay to bearer

**CHASE ◯**

Check box and fill out the reverse side if you would
like to enroll in automatic payments. ☐

DAYNA M SPANN, NICOSHALMAR JAMES
SPANN
Account number          1317022200
Total amount due         $1,617.30
Payment due date         03/01/2023

CHASE
PO BOX 78420
PHOENIX AZ 85062-8420

ONE THOUSAND SIX HUNDRED
SEVENTEEN 30/00

To make additional principal, escrow, or fee payments, sign in to
www.chase.com or detach coupon and mail with your check.

Monthly payment       $  1,617.30
($1,617.30)

Late charges          $        –
($0.00)

Fees due              $        –
($0.00)

Additional principal  $        –

Additional escrow     $        –

Total amount enclosed $  1,617.30

⑆50000 50 26⑆: 000 13 170 2 2 200 ⑈"

FOR DEPOSIT ONLY

By Spokane Nikoshalmar-James/ben

w/o recourse

By: Conti; Dayna-Marie/Ben

w/o Recourse

98765431 1234

checking account    check
number              number

123

$

MSD 04023 C

---

## Automatic payment enrollment form

**1 Please debit my:**

☐ Checking Account    ☐ Savings Account

$1,617.30
Amount Due*

1317022200
Mortgage Account Number

**2**

_____
Account Holder Name

_____
Financial Institution

$ _____
Additional Principal per Month (optional)

_____
Routing Number

_____
Account Number

**3 Day of the month we should withdraw your payment:**

We'll withdraw your payment on the due date if you leave this blank.

Please allow 10 business days for setup, continue making your payment until you receive confirmation ACH has been setup.

**4**

_____
Signature of Financial Institution Account Holder

_____
Date

Enroll for free automatic payments by checking the box on the front and mailing in this form in the envelope provided.

Learn more at www.chase.com/waystopay

Locate your account and routing number on your check.

YOUR NAME
1234 your street
city, state 12345

123

CHASE ◇

⑆123456789
routing
number

98765431 1234
checking account    check
number              number

$ _____

*By signing above you authorize us, any successor servicer, sub-servicer, or assignee to electronically withdraw monthly payments plus any additional principal you authorized from your personal bank account on the date specified, or on the next available business day if that date falls on a non-banking day. Requests for changes or cancellations must be made 3 business days before the payment date. You authorize us to change the amount of your payment as necessary if: there is an increase in the amount you must pay to maintain the escrow account; a co-borrower, or anyone else on your side of the property is not making their payment amounts due to changes in the interest rate or escrow; or for any other reason. Automatic payments may be cancelled if automatic payments are returned or if you... a co-borrower, or anyone else on your side of the property makes a separate payment on the loan. We may also change terms at any time and will provide any required notice to you, at the address or telephone number listed above for instructions for making payments on the loan. We may also change terms at any time and will provide any required notice in writing. I hereby acknowledge that I have read the agreement and agree to its terms and will keep a copy for my records.

Contact Information and Disclosures (continued)

**Crediting of Payments**

Payments will be credited as of the day we receive them if the payment is received by 5:00 p.m. in the time zone in which the mailing address on your payment coupon is located and if:

(a)   the payment is received Monday through Saturday except for legal holidays
(b)   the payment is received at the address shown on your payment coupon
(c)   your payment is made with a check or money order drawn on a U.S. bank in U.S. dollars
(d)   the attached payment coupon is enclosed with your payment and
(e)   your payment is sent in the enclosed return envelope.

Credit for payments made in any other manner may be delayed for up to five (5) days. Please allow five to seven (5-7) days for payments to reach the payment address. Please do not send cash through the mail. Please include your account number and name on the front of your check or money order. Do not staple, tape or paper clip your payment to your payment coupon. If you want to change how we applied your payment to your mortgage loan, we must receive your request within 60 days of the payment date.

AUTHORIZATION TO CONVERT YOUR CHECK TO AN ELECTRONIC TRANSFER DEBIT: When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check. Your bank account may be debited as soon as the same day we receive your payments.  You may not receive your check back from your institution.

JPMorgan Chase Bank, N.A. Member FDIC. ©2019 JPMorgan Chase & Co.

**This Page Intentionally Left Blank**



**CHASE** ⬢

700 Kansas Lane
LA4-6833
Monroe, LA 71203

10097  **Page 1 of 3**



($) Thank you for your payment of
**$1,617.30 on 01/07/2023.**

Statement date 01/07/2023

| Payment due | Amount due |
|---|---|
| ~~02/01/2023~~ | $1,617.30 |
| *ON DEMAND* | |

*Accepted*
*2/18/2023*

A late fee of $64.93 may apply if payment received after 02/16/2023.

լ|իկ|ը|ի|ս|ս|ի||ս|ս|ս|ս|ս|ս|ս|ս|ս|ս|ս|ս|ս|ս|

10097 MSD  T 00723 C -  YRE BR2
DAYNA M SPANN
NICOSHALMAR JAMES SPANN
3936 JUANITA MAY AVE
NORTH LAS VEGAS NV 89032

*By: Spann; Nicoshalmar-James/agent*
*For: NICOSHALMAR SPANN*
*w/o recourse*
*By: Spann; Dayna-Marie/Agent*
*For: DAYNA SPANN*
*w/o Recourse*

---

### Mortgage Information

| | |
|---|---|
| Account number | 1317022200 |
| Property address | 3936 Juanita May Ave |
| | North Las Vegas, NV  89032 |
| Original principal balance | $216,816.00 |
| Unpaid principal balance¹ | $204,270.04 |
| Maturity date | 10/2048 |
| Deferred balance | $27,655.92 |
| Interest rate | 5.99000% |
| Escrow balance | ($662.75) |
| Corporate advance balance | $15.00 |

### Past payments breakdown

| | Paid since last statement | Paid year-to-date |
|---|---|---|
| Principal | $277.50 | $277.50 |
| Interest | $1,021.03 | $1,021.03 |
| Escrow | $318.77 | $318.77 |
| **Total** | **$1,617.30** | **$1,617.30** |

### Explanation of amount due

| | |
|---|---|
| Principal | $278.88 |
| Interest | $1,019.65 |
| Escrow | $318.77 |
| Total payment due on ~~02/01/2023~~ | $1,617.30 |

---

### Your tax statement



IRS tax statements

Your tax statement is enclosed. Find answers to frequently asked questions at
www.chase.com/TaxStatement

### Happy Anniversary



Thanks!

Thanks for having your account
with Chase since 2019!

---

### Ways to pay

Convenient and free ways to make your payment:

▢← Enroll in automatic payments at www.chase.com or back of statement coupon.

▢ Make your payment at www.chase.com

☎ Pay by phone with our dedicated number at 1-833-PAY-CHASE (1-833-729-2427).

▱ Mail your payment with the coupon below.

### Resources

ⓘ www.chase.com/MyMortgage

☎ Call customer service    1-800-848-9136
(24/7 automated line)
Monday - Friday    8 a.m. - 8 p.m. (ET)
Saturday    9 a.m. - 6 p.m. (ET)

Es  Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198 o visita www.chase.com/Statement

---

**CHASE**

DAYNA M SPANN, NICOSHALLMAR JAMES SPANN

Account number 1317202200
Total amount due $1,617.30
Payment due date -02/01/2023

CHASE
PO BOX 78420
PHOENIX AZ 85062-8420

Check box and fill out the reverse side if you would like to enroll in automatic payments. ☐

Accepted
2/18/2023
Pay to bearer

ON DEMAND

ONE THOUSAND SIX HUNDRED
SEVENTEEN 30/100

0001317022002 313000 00161730 00168223 00161730 00008

To make additional principal, escrow, or fee payments, sign in to www.chase.com or detach coupon and mail with your check.

| | |
|---|---|
| Monthly payment ($1,617.30) | $ 1,617.30 |
| Late charges ($0.00) | $ |
| Fees due ($0.00) | $ |
| Additional principal | $ |
| Additional escrow | $ |
| Total amount enclosed | $ 1,617.30 |

⑈500005026⑈ 000131700222000⑈

## Automatic payment enrollment form

**1 Please debit my:**
☐ Checking Account   ☐ Savings Account

$1,617.30
Amount Due[1]

1317022200
Mortgage Account Number

**2**

_____
Financial Institution

Account Holder Name

$_____
Account Number

_____
Routing Number

Additional Principal per Month (optional)

**3 Day of the month we should withdraw your payment:** _____
We'll withdraw your payment on the due date if you leave this blank.
Please allow 10 business days for setup; confirm making your payment until you receive confirmation ACH has been setup.

**4**

_____        _____
Signature of Financial Institution Account Holder                Date

By signing above you authorize us, any successor servicer, sub-servicer, or assignee to electronically withdraw monthly payments plus any additional principal you authorize from your personal bank account... [small print, partially illegible]

---

FOR DEPOSIT ONLY

By: *Spamjicosholmar(amesptime*
*up recou...*

By: *spamji Dayna-Home...*
*w/o Recou...*

Enroll for free automatic payments by checking the box on the front and mailing in this form in the envelope provided.
Learn more at www.chase.com

Locate your account and routing number on your check.

1234

YOUR NAME
1234 your street
city, state 12345

CHASE ◯
[bank address]

:123456789:    987654321    1234

routing
number          check
                number

MSD 00723 C

## Transaction activity

| Transaction date | Description | Total received | Principal | Interest | Escrow | Fees/ Advances | Unapplied funds |
|---|---|---|---|---|---|---|---|
| 12/13/2022 | COUNTY TAX PAID | | | | $766.97 | | |
| 01/07/2023 | PAYMENT | $1,617.30 | $277.50 | $1,021.03 | $318.77 | | |

## Additional information

The Corporate Advance Balance may be for funds we applied as a courtesy to make a full payment on your behalf. This may occur when we receive funds from you that are less than your payment amount.

Also, depending on the status of your account, it may cover inspections, home valuations, legal fees and costs, property maintenance, or other expenses. Your Corporate Advance Balance is listed under the Mortgage information section on this statement.

Unless you specify otherwise, we will apply funds received in excess of the payment due to additional periodic payments up to two months ahead. Any funds remaining after application of the periodic payments or any amount insufficient to make an additional payment will be applied to outstanding fees and advances, and then as a principal reduction. All principal reductions are applied after periodic payments are applied.

## Contact Information and Disclosures

For all of our ways to contact us, please visit www.chase.com/Mortgage-Contact-Us

| Customer Service Inquiries | Designated Address for Notices of Error, Information Requests, and Qualified Written Requests | Insurance Bills & Policies | Overnight Payment |
|---|---|---|---|
| Chase<br>Mail Code LA4-6475<br>700 Kansas Lane<br>Monroe, LA 71203 | Chase<br>Mail Code LA4-6911<br>700 Kansas Lane<br>Monroe, LA 71203-4774 | www.MyCoverageInfo.com/chase<br>Email: chase@mycoverageinfo.com<br>Chase<br>P.O. Box 4465<br>Springfield, OH 45501<br>Fax: 1-678-475-8799<br>(Free of charge from any Chase branch) | Chase<br>ATTN: P.O. Box 71244<br>400 White Clay Center Drive<br>Newark, DE 19711 |

## Account Information Reported to Credit Bureau

We may report information about your Account to credit bureaus. Late payments, missed payments or other defaults on your Account may be reflected in your credit report. If you think we have reported inaccurate information to a credit bureau, please write to us at Chase Home Lending, Mail Code LA4-6945, 700 Kansas Lane, Monroe, LA 71203.

If you do not make your mortgage payment on time or request services from Chase, you may be charged fees. Those fees may include those shown in your loan documents, provided by law, or related to the services provided. The fee structure may change without notice except where prohibited by law. Other fees may be charged for services provided. Fees may not be applicable to certain products and may be limited by law.

## [1]Loan Payoff Information

The Unpaid Principal Balance on your statement is not a payoff quote. Payoff quotes are available by logging into your account on www.chase.com You can also request a quote anytime through our 24-hour automated phone service by calling 1-877-505-2894.

## Important Bankruptcy Information

If you or your account is subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge, this statement is for informational purposes only and is not an attempt to collect a debt.

## Homeowner Assistance

You can call the U.S. Department of Housing and Urban Development at 1-800-569-4287, or the U.S. Department of the Treasury-sponsored HOPE Hotline number at 1-888-995-HOPE (1-888-995-4673) to get free assistance, or visit www.HopeNow.com You can also find a nonprofit HUD-approved counselor who can provide the information and assistance you may need to avoid foreclosure by using the search tool at www.hud.gov/offices/hsg/sfh/hcc/fc/ These HUD-approved housing counseling agencies found on www.HUD.gov can also help you with your household budgeting at no charge. Additional educational resources are available via Fannie Mae's website at www.knowyouroptions.com

You may have the ability to apply for the Department of Treasury's Homeowner Assistance Fund (HAF), if HAF is available in your jurisdiction. If your state or jurisdiction offers HAF programs, you may contact those programs directly for more information, including how to apply.

**Contact Information and Disclosures** (continued)

**Crediting of Payments**

Payments will be credited as of the day we receive them if the payment is received by 5:00 p.m. in the time zone in which the mailing address on your payment coupon is located and if:

(a)    the payment is received Monday through Saturday except for legal holidays
(b)    the payment is received at the address shown on your payment coupon
(c)    your payment is made with a check or money order drawn on a U.S. bank in U.S. dollars
(d)    the attached payment coupon is enclosed with your payment and
(e)    your payment is sent in the enclosed return envelope.

Credit for payments made in any other manner may be delayed for up to five (5) days. Please allow five to seven (5-7) days for payments to reach the payment address. Please do not send cash through the mail. Please include your account number and name on the front of your check or money order. Do not staple, tape or paper clip your payment to your payment coupon. If you want to change how we applied your payment to your mortgage loan, we must receive your request within 60 days of the payment date.

AUTHORIZATION TO CONVERT YOUR CHECK TO AN ELECTRONIC TRANSFER DEBIT: When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check. Your bank account may be debited as soon as the same day we receive your payments.  You may not receive your check back from your institution.

 JPMorgan Chase Bank, N.A. Member FDIC. ©2019 JPMorgan Chase & Co.

This Page Intentionally Left Blank


**Annual Tax and Interest Statement**

700 Kansas Lane
LA4-6633
Monroe, LA 71203

| | |
|---|---|
| Loan Number | 1317022200 |
| Statement Date | 01/07/2023 |
| Tax Year | 2022 |
| Property Address | 3936 JUANITA MAY AVE |
| | NORTH LAS VEGAS NV 89032 |

**Principal Activity**

| | |
|---|---|
| Beginning Balance | $210,809.30 |
| Amount Paid | $0.00 |
| Ending Balance | $232,203.46 |

10097 MSD T 00723 C -          1098
DAYNA M SPANN
NICOSHALMAR JAMES SPANN
3936 JUANITA MAY AVE
NORTH LAS VEGAS NV 89032

**Escrow Activity**

| | |
|---|---|
| Beginning Escrow Balance | $0.00 |
| Deposits | $6,162.83 |
| Disbursements: | |
| Homeowners Insurance Paid | $558.00 |
| Mortgage Insurance Paid | $0.00 |
| Real Estate Taxes Paid | $3,048.60 |
| Additional Assessments Paid | $0.00 |
| Escrow Refund | $0.00 |
| Ending Escrow Balance | $0.00 |

---

CORRECTED (if checked) ☐

| RECIPIENT'S/LENDER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone number. | *Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-1380<br>Form **1098**<br>(Rev. January 2022)<br>For Calendar Year 2022 | **Mortgage Interest Statement** |
|---|---|---|---|
| JPMorgan Chase Bank, N.A.<br>Mail Code LA4-6396<br>700 Kansas Lane<br>Monroe, LA 71203<br>PHONE: 1-800-848-9136 | 1 Mortgage interest received from payer(s)/borrower(s)*<br>$  6,154.91 | | Copy B<br>For Payer/<br>Borrower |

| RECIPIENT'S/LENDER'S TIN<br>13-4994650 | PAYER'S/BORROWER'S TIN<br>***-**-4153 | 2 Outstanding mortgage principal<br>$  210,809.30 | 3 Mortgage origination date<br>09/29/2018 | The information in boxes 1 through 9 and 11 is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points, reported in boxes 1 and 6; or because you didn't report the refund of interest (box 4); or because you claimed a nondeductible item. |
|---|---|---|---|---|
| PAYER'S/BORROWER'S name<br>DAYNA M SPANN<br>NICOSHALMAR JAMES SPANN | | 4 Refund of overpaid interest<br>$  0.00 | 5 Mortgage insurance premiums<br>$  0.00 | |
| | | 6 Points paid on purchase of principal residence<br>$  0.00 | | |
| Street address (including apt. no.)<br>3936 JUANITA MAY AVE | | 7 ☐ If address of property securing mortgage is the same as PAYER'S/BORROWER'S address, the box is checked, or the address or description is entered in box 8. | | |
| City or town, state or province, country, and ZIP or foreign postal code<br>NORTH LAS VEGAS NV 89032 | | 8 Address or description of property securing mortgage<br>3936 JUANITA MAY AVE<br>NORTH LAS VEGAS NV 89032 | | |
| 9 Number of properties securing the mortgage<br>1 | 10 Other | | | 11 Mortgage acquisition date |
| Account number (see instructions)<br>1317022200 | | | | |

Form 1098 (Rev. 1-2022)          (Keep for your records)          www.irs.gov/Form1098          Department of the Treasury - Internal Revenue Service

---

**Please Note:**

**COVID-19 Assistance: Delayed Payments**
Delayed payments under COVID-19 Assistance may impact the amount of mortgage interest shown on your IRS Form 1098. See FAQs on the back for more information.

Your interest may be overstated in Box 1 if all or a portion of your payments are subsidized by a state-funded program. Contact your tax advisor with questions.

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198.

This statement shows the Real Estate Taxes Chase paid from your escrow account. Further Real Estate Tax questions? See www.Chase.com/PrepayTaxesFAQ

Frequently Asked Questions About Your IRS Form 1098 (Mortgage Interest Statement)

**Why doesn't Box 2 on my Form 1098 report my principal balance at the end of the year?**
The IRS requires us to report the outstanding principal balance as of January 1st of the tax year being reported in Box 2 or when Chase originated or acquired the loan in the tax year.

**I pay mortgage insurance premiums monthly. Why isn't that listed in Box 5 (Mortgage insurance premiums) on my Form 1098?**
Box 5 (Mortgage insurance premiums) applies only to loans closed after December 31, 2006. For more information about the deductibility of mortgage insurance see the Schedule A (Form 1040) instructions for more information at www.IRS.gov.

**Why is the mortgage interest shown on my Form 1098 different from last year?**
The amount of interest you pay may change from year to year, usually because of a change in your interest rate or in the number of payments we received from you during the calendar year. For instance, you may have paid less interest if you delayed payments through COVID-19 Assistance. This may result in a lower amount of interest showing on your Form 1098.

**Why don't the interest and principal amounts shown on my Form 1098 match the amounts on my billing statement?**
There are several reasons for the difference between the amounts shown on your Form 1098 and billing statement. The interest reported on your Form 1098 may include fees or exclude interest that wasn't due yet. The principal amount on your Form 1098 may include capitalized amounts from a modification.

**Why doesn't my Social Security number appear on Form 1098?**
The IRS requires us to prepare Form 1098 in the name and Social Security number of the "Payer of Record" on the loan. The "Payer of Record" is the first person listed on the billing statement, who is also known as the primary borrower.

**Will I receive more than one Form 1098 for the same property in a year?**
You should receive Form 1098 from each company to which you paid reportable mortgage interest or points. You could receive more than one Form 1098 if you refinanced the property during the year and/or if servicing on the loan was transferred.

**Do you report the real estate taxes I paid during the year on Form 1098? And can I deduct them on my income tax return?**
The IRS does not require us to report real estate taxes paid by you on Form 1098. We do, however, provide that information to you on the Annual Tax and Interest Statement for informational purposes only. To determine if the real estate taxes you paid are deductible, we suggest you contact your own tax advisor or the IRS at 1-800-829-1040 or www.IRS.gov.

**I paid points at closing, so why aren't they listed in the Points Paid on Purchase of Principal Residence box on my Form 1098?**
According to the IRS, not all points are reportable, such as points paid to improve a residence, purchase a second home or refinance a loan. We suggest you contact your own tax advisor or the IRS at 1-800-829-1040 or www.IRS.gov.

**Why didn't I receive my 1099 Form at the same time I received my Form 1098?**
Chase will mail your tax forms to you as the forms become available. While we mail tax forms by January 31st, it isn't always possible to combine them into a single mailing.

**How do I go paperless and stop receiving tax forms in the mail?**
Visit the paperless options on the Profile & Settings page at www.chase.com/paperless to select the tax forms you wish to receive paperless.

**Who do I contact to correct my Social Security number on my tax statement?**
Submit your written request and any supporting documents to:

| Regular Mail | Overnight Mail | Fax |
|---|---|---|
| Chase<br>Attn:Year End<br>Mail Code OH4-7214<br>P.O. Box 24725<br>Columbus, OH 43224-9833 | Chase<br>Attn: Year End<br>Mail Code OH4-7214<br>3415 Vision Drive<br>Columbus, OH 43219-6009 | 1-614-422-7575; it's free from any Chase branch |

# Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction. Each borrower may have to include in income a share of any amount reported in box 4.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Schedule A, C, or E (Form 1040) for how to report the mortgage interest. Also, for more information, see Pub. 936 and Pub. 535.

**Payer's/Borrower's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (SSN, ITIN, ATIN, or EIN). However, the issuer has reported your complete TIN to the IRS.

**Account number.** May show an account or other unique number the lender has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received by the recipient/lender during the year. This amount includes interest on any obligation secured by real property, including a mortgage, home equity loan, or line of credit. This amount does not include points, government subsidy payments, or seller payments on a "buydown" mortgage. Such amounts are deductible by you only in certain circumstances. **Caution: If you prepaid** interest in the calendar year that accrued in full by January 15 of the subsequent

**Box 2.** Shows the outstanding principal on the mortgage as of January 1 of the calendar year. If the mortgage originated in the calendar year, shows the mortgage principal as of the date of origination. If the recipient/lender acquired the loan in the calendar year, shows the mortgage principal as of the date of acquisition.
**Box 3.** Shows the date of mortgage origination.
**Box 4.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 4 amount on the "Other income" line of your calendar year Schedule 1 (Form 1040). No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and Itemized Deduction Recoveries in Pub. 525.
**Box 5.** If an amount is reported in this box, it may qualify to be treated as deductible mortgage interest. See the calendar year Schedule A (Form 1040) instructions and Pub. 936.
**Box 6.** Not all points are reportable to you. Box 6 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 6 may also be deductible. See Pub. 936 to figure the amount you can deduct.
**Box 7.** If the address of the property securing the mortgage is the same as the payer's/borrower's, either the box has been checked, or box 8 has been completed.
**Box 8.** Shows the address or description of the property securing the mortgage.
**Box 9.** If more than one property secures the loan, shows the number of properties



**CHASE**

700 Kansas Lane
LA4-6633
Monroe, LA 71203

($) Thank you for your payment of
$1,617.30 on 12/07/2022.

Statement date 12/07/2022

| Payment due | Amount due |
|---|---|
| 04/01/2023 | $1,617.30 |

*ON DEMAND*

A late fee of $64.93 may apply if payment received after
01/18/2023.

19332 MSD Z 34122 C - BR2
DAYNA M SPANN
NICOSHALMAR JAMES SPANN
3936 JUANITA MAY AVE
NORTH LAS VEGAS NV 89032

*Accepted*
*2/18/2023*
*By: Spann; Nicoshalmar-James/agent*
*For: Nico'SHALMAR SPANN*
         *No recourse*
*By: Spann; Dayna-Marie/Agent*
*For: DAYNA SPANN*
              *W/o Recourse*

## Mortgage information

| Account number | 1317022200 |
|---|---|
| Property address | 3936 Juanita May Ave |
| | North Las Vegas, NV 89032 |
| Original principal balance | $216,816.00 |
| Unpaid principal balance¹ | $204,547.54 |
| Maturity date | 10/2048 |
| Deferred balance | $27,655.92 |
| Interest rate | 5.99000% |
| Escrow balance | ($214.55) |
| Corporate advance balance | $15.00 |

## Past payments breakdown

 

| | Paid since last statement | Paid year-to-date |
|---|---|---|
| Principal | $276.12 | $1,636.27 |
| Interest | $1,022.41 | $6,154.91 |
| Escrow | $318.77 | $6,162.83 |
| **Total** | **$1,617.30** | **$13,954.01** |

## Explanation of amount due

| Principal | $277.50 |
|---|---|
| Interest | $1,021.03 |
| Escrow | $318.77 |
| Total payment due on 01/01/2023 | $1,617.30 |



## Tax statements

IRS tax
statements

Tax statements will be available online mid-January. Paper tax statements will be in your January billing statement or mailed by January 31.
www.chase.com/TaxStatement

## Chase MyHome℠

Your personalized mortgage dashboard - an in-depth view of your mortgage, your home and your neighborhood.
Explore at www.chase.com/ChaseMyHome

### Ways to pay

Convenient and free ways to make your payment:

▢ᴄ Enroll in automatic payments at www.chase.com or back of statement coupon.

▢ Make your payment at www.chase.com

☏ Pay by phone with our dedicated number at 1-833-PAY-CHASE (1-833-729-2427).

▤ Mail your payment with the coupon below.

### Resources

ⓘ www.chase.com/MyMortgage

☏ Call customer service    1-800-848-9136
                                        (24/7 automated line)
Monday - Friday    8 a.m. - 8 p.m. (ET)
Saturday              9 a.m. - 6 p.m. (ET)

Es Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198 o visita www.chase.com/Statement

000131702200002 313000 00161730 00168223 00161730 00008

**CHASE** ⬡

Check box and fill out the reverse side if you would like to enroll in automatic payments. ☐

To make additional principal, escrow, or fee payments, sign in to www.chase.com or detach coupon and mail with your check.

DAYNA M SPANN, NICOSHALMAR JAMES
SPANN
Account number       1317022200
Total amount due      $1,617.30
Payment due date      04/04/2023

Accepted
2/18/2023
Pay to bearer
ON DEMAND

ONE THOUSAND SIX HUNDRED
SEVENTEEN 30/100

CHASE
PO BOX 78420
PHOENIX AZ 85062-8420

Monthly payment      $  1,617.30
($1,617.30)

Late charges         $          .
($0.00)

Fees due             $          .
($0.00)

Additional principal $          .

Additional escrow    $          .

Total amount enclosed $ 1,617.30

⑆50000050 26⑆ 000 13170 2 2 200 ⑈

FOR DEPOSIT ONLY

By: Spates; Noc oshalmar-James
w/o recourse

By: Spates; Dayna-Marie
w/o recourse

## Automatic payment enrollment form

Enroll for free automatic payments by checking the box on the front and mailing in this form in the envelope provided. Learn more at www.chase.com/autopay

Locate your account and routing number on your check.

1 Please debit my:
☐ Checking Account   ☐ Savings Account

$1,617.30          1817022200
Amount Due¹        Mortgage Account Number

2 _____
Financial Institution

$ _____
Account Holder Name

_____   $ _____
Routing Number    Account Number   Additional Principal per Month (optional)

3 Day of the month we should withdraw your payment:
We'll withdraw your payment on the due date if you leave this blank.
Please allow 10 business days for setup; continue making your payment until you receive confirmation ACH has been setup.

4 _____          _____
Signature of Financial Institution Account Holder    Date

By signing above you authorize us, any successor servicer, sub-servicer, or assignee to electronically withdraw monthly payments plus any additional principal you authorize from your personal bank account (immediately preceded if the box is checked above) each month on the approved business day if that date falls on a non-banking day. Requests for changes or cancellations must be made 3 business days before the payment date. You authorize us to change the amount of your monthly payment if the amount changes properly that date. Automatic payments may be cancelled if automatic payments are returned or if you, a co-borrower, or the bank request it in writing. We may also change terms of this loan and will provide notice in the payment amount due to changes in the interest rate or escrow, or for any other reason. Automatic payments may be cancelled if automatic payments are returned or if you, a co-borrower, or the bank request it in writing. We may also change terms of this loan and will provide notice to assure the loan is free for bankruptcy. If this should occur, please contact us at the address or telephone number listed above for instructions for making payments on this loan. In writing. I hereby acknowledge that I have read this agreement and agree to its terms and will keep a copy for my records.

## Transaction activity

| Transaction date | Description | Total received | Principal | Interest | Escrow | Fees/ Advances | Unapplied funds |
|---|---|---|---|---|---|---|---|
| 11/28/2022 | WINDSTORM INSURANCE PAID | | | | $558.00 | | |
| 12/07/2022 | PAYMENT | $1,617.30 | $276.12 | $1,022.41 | $318.77 | | |

## Additional information

The Corporate Advance Balance may be for funds we applied as a courtesy to make a full payment on your behalf. This may occur when we receive funds from you that are less than your payment amount.

Also, depending on the status of your account, it may cover inspections, home valuations, legal fees and costs, property maintenance, or other expenses. Your Corporate Advance Balance is listed under the Mortgage Information section on this statement.

Unless you specify otherwise, we will apply funds received in excess of the payment due to additional periodic payments up to two months ahead. Any funds remaining after application of the periodic payments or any amount insufficient to make an additional payment will be applied to outstanding fees and advances, and then as a principal reduction. All principal reductions are applied after periodic payments are applied.

## Contact Information and Disclosures

For all of our ways to contact us, please visit www.chase.com/Mortgage-Contact-Us

| **Customer Service Inquiries** | **Designated Address for Notices of Error, Information Requests, and Qualified Written Requests** | **Insurance Bills & Policies** | **Overnight Payment** |
|---|---|---|---|
| Chase Mail Code LA4-6475 700 Kansas Lane Monroe, LA 71203 | Chase Mail Code LA4-6911 700 Kansas Lane Monroe, LA 71203-4774 | www.MyCoverageInfo.com/chase Email: chase@mycoverageinfo.com Chase P.O. Box 4465 Springfield, OH 45501 Fax: 1-678-475-8799 (Free of charge from any Chase branch) | Chase ATTN: P.O. Box 71244 400 White Clay Center Drive Newark, DE 19711 |

### Account Information Reported to Credit Bureau

We may report information about your Account to credit bureaus. Late payments, missed payments or other defaults on your Account may be reflected in your credit report. If you think we have reported inaccurate information to a credit bureau, please write to us at Chase Home Lending, Mail Code LA4-6945, 700 Kansas Lane, Monroe, LA 71203.

If you do not make your mortgage payment on time or request services from Chase, you may be charged fees. Those fees may include those shown in your loan documents, provided by law, or related to the services provided. The fee structure may change without notice except where prohibited by law. Other fees may be charged for services provided. Fees may not be applicable to certain products and may be limited by law.

### [1]Loan Payoff Information

The Unpaid Principal Balance on your statement is not a payoff quote. Payoff quotes are available by logging into your account on www.chase.com You can also request a quote anytime through our 24-hour automated phone service by calling 1-877-505-2894.

### Important Bankruptcy Information

If you or your account is subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge, this statement is for informational purposes only and is not an attempt to collect a debt.

### Homeowner Assistance

You can call the U.S. Department of Housing and Urban Development at 1-800-569-4287, or the U.S. Department of the Treasury-sponsored HOPE Hotline number at 1-888-995-HOPE (1-888-995-4673) to get free assistance, or visit www.HopeNow.com You can also find a nonprofit HUD-approved counselor who can provide the information and assistance you may need to avoid foreclosure by using the search tool at www.hud.gov/offices/hsg/sfh/hcc/fc/ These HUD-approved housing counseling agencies found on www.HUD.gov can also help you with your household budgeting at no charge. Additional educational resources are available via Fannie Mae's website at www.knowyouroptions.com

You may have the ability to apply for the Department of Treasury's Homeowner Assistance Fund (HAF), if HAF is available in your jurisdiction. If your state or jurisdiction offers HAF programs, you may contact those programs directly for more information, including how to apply.

Contact Information and Disclosures (continued)

## Crediting of Payments

Payments will be credited as of the day we receive them if the payment is received by 5:00 p.m. in the time zone in which the mailing address on your payment coupon is located and if:

(a)   the payment is received Monday through Saturday except for legal holidays
(b)   the payment is received at the address shown on your payment coupon
(c)   your payment is made with a check or money order drawn on a U.S. bank in U.S. dollars
(d)   the attached payment coupon is enclosed with your payment and
(e)   your payment is sent in the enclosed return envelope.

Credit for payments made in any other manner may be delayed for up to five (5) days. Please allow five to seven (5-7) days for payments to reach the payment address. Please do not send cash through the mail. Please include your account number and name on the front of your check or money order. Do not staple, tape or paper clip your payment to your payment coupon. If you want to change how we applied your payment to your mortgage loan, we must receive your request within 60 days of the payment date.

AUTHORIZATION TO CONVERT YOUR CHECK TO AN ELECTRONIC TRANSFER DEBIT: When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check. Your bank account may be debited as soon as the same day we receive your payments.  You may not receive your check back from your institution.

 JPMorgan Chase Bank, N.A. Member FDIC. ©2019 JPMorgan Chase & Co.

This Page Intentionally Left Blank

# CHASE

700 Kansas Lane
LA4-6633
Monroe, LA 71203

Statement date 09/16/2022

| Payment due | Amount due |
|---|---|
| ~~10/01/2022~~ | $6,437.03 |
| *ON DEMAND* | |

*Accepted*
*2/18/2023*
*By: Spann; Nicoshalmar-James/agent*
*For: NICOSHALMAR SPANN*
*w/o recourse*
*By: Spann; Dayna-Marie/Agent*
*FOR: DAYNA SPANN*
*w/o Recourse*

A late fee of $64.93 may apply if payment received after 10/16/2022.

25868 MSD Z 25922 C - BRE
DAYNA M SPANN
NICOSHALMAR JAMES SPANN
3936 JUANITA MAY AVE
NORTH LAS VEGAS NV 89032

## Mortgage Information

| | |
|---|---|
| Account number | 1317022200 |
| Property address | 3936 Juanita May Ave |
| | North Las Vegas, NV 89032 |
| Original principal balance | $216,816.00 |
| Unpaid principal balance¹ | $206,183.81 |
| Maturity date | 10/2048 |
| Deferred balance | $27,655.92 |
| Interest rate | 5.99000% |
| Escrow balance | ($770.03) |

## Past payments breakdown

| | Paid since last statement | Paid year-to-date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $4,282.38 |
| **Total** | **$0.00** | **$4,282.38** |

## Explanation of amount due

| | |
|---|---|
| Principal | $273.38 |
| Interest | $1,025.15 |
| Escrow | $310.28 |
| **Monthly payment** | **$1,608.81** |
| **Original missed payment date** | **07/01/2022** |
| **Past due amount** | **$4,828.22** |
| Total payment due on ~~10/01/2022~~ | $6,437.03 |

## Important account information



Please see the attached Delinquency Information page for more details on your account status.

## Need mortgage assistance?

# We're here to help



Visit ~~www.chase.com/MortgageAssistance~~
to learn more about options for keeping or selling your home, getting current, and more.

## Ways to pay

Convenient and free ways to make your payment:

- Enroll in automatic payments at www.chase.com or back of statement coupon.
- Make your payment at www.chase.com
- Pay by phone with our dedicated number at 1-833-PAY-CHASE (1-833-729-2427).
- Mail your payment with the coupon below.

## Resources

- www.chase.com/MyMortgage
- Call customer service    1-800-848-9380
  (24/7 automated line)
  Monday - Friday    8 a.m - 8 p.m. (ET)
  Saturday    9 a.m. - 6 p.m. (ET)
- Es   Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-800-848-9380 o visita www.chase.com/Statement

000131702220002 313000 00160861 00167374 00643703 00000

**CHASE** 〇

Check box and fill out the reverse side if you would ☐
like to enroll in automatic payments.

DAYNA M SPANN, NICOSHALIMAR JAMES
SPANN
Account number          1317022200
Total amount due        $6,437.03
Payment due date        10/01/2022

ili1ili1ili1ili1ili1lili1ili1ili1ili1ili1ili1
SIX THOUSAND FOUR HUNDRED
THIRTY-SEVEN 03/100

CHASE
PO BOX 78420
PHOENIX AZ 85062-8420

Accepted 2/18/2023
Pay to bearer

ON DEMAND

To make additional principal, escrow, or fee payments, sign in to
www.chase.com or detach coupon and mail with your check.

Monthly payment      $  6,437.03
($1,606.61)

Late charges         $       .
($0.00)

Fees due             $       .
($0.00)

Additional principal $       .

Additional escrow    $       .

Total amount enclosed $ 6,437.03

⑆50000 50 26⑆ 000 131 70 2 2 200⑈

FOR DEPOSIT ONLY

By: Glenn Nicashalmar-James~Kane
w/o recourse

By: Karin ; Dayna-Marie-Kane
w/o Recourse

Enroll for free automatic payments by checking the box on the front and mailing in this form in the envelope provided. Learn more at www.chase.com/waystopay

Locate your account and routing number on your check.

YOUR NAME
123 your street
city, state 12345

1234

CHASE ○

|:123456789  12:
routing number    checking account number    check number

987654321 12

MSD 25922 C

## Automatic payment enrollment form

**1  Please debit my:**
☐ Checking Account   ☐ Savings Account

$1,608.61                    1317022200
Amount Due¹                  Mortgage Account Number

**2**
_____     _____
Financial Institution        Account Holder Name

$ _____
Additional Principal per Month (optional)

_____
Routing Number              Account Number

**3  Day of the month we should withdraw your payment:** _____
We'll withdraw your payment on the due date if you leave this blank.
Please allow 10 business days for setup, continue making your payment until you receive confirmation ACH has been setup.

**4**
_____        _____
Signature of Financial Institution Account Holder        Date

¹By signing above you authorize us, any successor servicer, sub-servicer, or assignee to electronically withdraw monthly payments plus any additional principal you authorize from your personal account on the date specified, or on the next business day if that date falls on a non-banking day. Requests for changes or cancellations must be made 3 business days before the payment date. You authorize us to change the amount of your payment as needed if there is an increase or decrease in the payment amount due to changes in the interest rate or escrow, or for any other reason. Automatic payments may be cancelled if automatic payments are returned or if you, a co-borrower or anyone listed on the loan file requests previously that secures the loan files for bankruptcy. If this should occur, please contact us at the address or telephone number listed above for instructions for making payments on the loan. We may also change the notary line and will provide notice as required notice in writing. I hereby acknowledge that I have read this agreement and agree to its terms and will keep a copy for my records.

**Transaction activity**

**No transactions since your last statement**

**Additional Information**

Unless you specify otherwise, we will apply funds received in excess of the payment due to additional periodic payments up to two months ahead. Any funds remaining after application of the periodic payments or any amount insufficient to make an additional payment will be applied to outstanding fees and advances, and then as a principal reduction. All principal reductions are applied after periodic payments are applied.

**Contact Information and Disclosures**

For all of our ways to contact us, please visit www.chase.com/Mortgage-Contact-Us

| Customer Service Inquiries | Designated Address for Notices of Error, Information Requests, and Qualified Written Requests | Insurance Bills & Policies | Overnight Payment |
|---|---|---|---|
| Chase | Chase | www.MyCoverageInfo.com/chase | Chase |
| Mail Code LA4-6475 | Mail Code LA4-6911 | Email: chase@mycoverageinfo.com | ATTN: P.O. Box 71244 |
| 700 Kansas Lane | 700 Kansas Lane | Chase | 400 White Clay Center Drive |
| Monroe, LA 71203 | Monroe, LA 71203-4774 | P.O. Box 4465 | Newark, DE 19711 |
| | | Springfield, OH 45501 | |
| | | Fax: 1-678-475-8799 | |
| | | (Free of charge from any Chase branch) | |

**Account Information Reported to Credit Bureau**

We may report information about your Account to credit bureaus. Late payments, missed payments or other defaults on your Account may be reflected in your credit report. If you think we have reported inaccurate information to a credit bureau, please write to us at Chase Home Lending, Mail Code LA4-6945, 700 Kansas Lane, Monroe, LA 71203.

If you do not make your mortgage payment on time or request services from Chase, you may be charged fees. Those fees may include those shown in your loan documents, provided by law, or related to the services provided. The fee structure may change without notice except where prohibited by law. Other fees may be charged for services provided. Fees may not be applicable to certain products and may be limited by law.

**¹Loan Payoff Information**

Your Unpaid Principal Balance is not a payoff quote. Learn more about the payoff process by calling the phone number in the Resources of this statement.

**Important Bankruptcy Information**

If you or your account is subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge, this statement is for informational purposes only and is not an attempt to collect a debt.

**Homeowner Assistance**

You can call the U.S. Department of Housing and Urban Development at 1-800-569-4287, or the U.S. Department of the Treasury-sponsored HOPE Hotline number at 1-888-995-HOPE (1-888-995-4673) to get free assistance, or visit www.HopeNow.com You can also find a nonprofit HUD-approved counselor who can provide the information and assistance you may need to avoid foreclosure by using the search tool at www.hud.gov/offices/hsg/sfh/hcc/fc/ These HUD-approved housing counseling agencies found on www.HUD.gov can also help you with your household budgeting at no charge. Additional educational resources are available via Fannie Mae's website at www.knowyouroptions.com

You may have the ability to apply for the Department of Treasury's Homeowner Assistance Fund (HAF), if HAF is available in your jurisdiction. If your state or jurisdiction offers HAF programs, you may contact those programs directly for more information, including how to apply.

**Crediting of Payments**

Payments will be credited as of the day we receive them if the payment is received by 5:00 p.m. in the time zone in which the mailing address on your payment coupon is located and if:

(a)  the payment is received Monday through Saturday except for legal holidays
(b)  the payment is received at the address shown on your payment coupon
(c)  your payment is made with a check or money order drawn on a U.S. bank in U.S. dollars
(d)  the attached payment coupon is enclosed with your payment and
(e)  your payment is sent in the enclosed return envelope.

Credit for payments made in any other manner may be delayed for up to five (5) days. Please allow five to seven (5-7) days for payments to reach the payment address. Please do not send cash through the mail. Please include your account number and name on the front of your check or money order. Do not staple, tape or paper clip your payment to your payment coupon. If you want to change how we applied your payment to your mortgage loan, we must receive your request within 60 days of the payment date.

AUTHORIZATION TO CONVERT YOUR CHECK TO AN ELECTRONIC TRANSFER DEBIT: When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check. Your bank account may be debited as soon as the same day we receive your payments. You may not receive your check back from your institution.

 JPMorgan Chase Bank, N.A. Member FDIC. ©2019 JPMorgan Chase & Co.

# Delinquency information

## Important notice

**You've missed one or more payments and your mortgage loan is in default.** This summary highlights the status of your account, your missed payments and how to get help.

We encourage you to call us at 1-800-848-9380 so we can help you apply for options that may allow you to stay in your home, such as a repayment plan, forbearance plan or loan modification, or otherwise avoid foreclosure through a short sale or deed-in-lieu of foreclosure. You can find more information on our loss mitigation options and application process at www.chase.com

## Amount due

As of 09/16/2022, $6,437.03 is required to bring your loan current.

The total fees due on your account are $0.00, which includes late fees of $0.00, NSF fees of $0.00, and other fees of $0.00. These amounts are included in the total shown above. Other fees may include charges as part of the terms of your account, permitted by applicable law, and/or were authorized for services we completed.

This amount was calculated on the date referenced above and is good for 10 days from the date of this statement. This means it may change if additional fees are billed after this date. Call us at 1-800-848-9380 to confirm the full payment amount you owe to bring your account up to date.

## Delinquency status

**Your mortgage loan payment was due on 07/01/2022, and is 77 days past due. If you have already made your past-due payments, please disregard this notice.**

If you have not made past-due payments, you may be at risk of foreclosure or other fees and charges.

### Summary of most recent missed payments

| Payment due date | Amount remaining past due |
| --- | --- |
| 07/01/2022 | $1,610.60 |
| 08/01/2022 | $1,608.81 |
| 09/01/2022 | $1,608.81 |

## Other resources

You can call the U.S. Department of Housing and Urban Development at 1-800-569-4287, the U.S. Department of the Treasury sponsored HOPE Hotline number at 1-888-995-HOPE (1-888-995-4673) to get free assistance, or visit www.HopeNow.com You can also find a nonprofit HUD-approved counselor who can provide the information and assistance you may need to avoid foreclosure by using the search tool at www.hud.gov/offices/hsg/sfh/hcc/fc/ These HUD-approved housing counseling agencies found on www.HUD.gov can also help you with your household budgeting at no charge. Additional educational resources are available via Fannie Mae's www.knowyouroptions.com website.

## Equal credit opportunity act notice

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20006.

## Important notice to servicemembers and their dependents

If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from foreclosure or eviction, and in some cases, interest rate benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, California law allows for a six-month deferral if certain conditions are met.

For more information, please call Chase Military Services at 1-877-469-0110.



This Page Intentionally Left Blank



700 Kansas Lane
LA4-6633
Monroe, LA 71203

Statement date 08/16/2022

| | Payment due | Amount due |
|---|---|---|
| | ~~09/01/2022~~ ON DEMAND | $4,828.22 |

A late fee of $64.93 may apply if payment received after 09/16/2022.

31343 MSD Z 22522 C - BRE
DAYNA SPANN
NICOSHALMAR JAMES SPANN
3936 JUANITA MAY AVE
NORTH LAS VEGAS NV 89032

*Accepted*
*2/18/2023*
*By: Spann; Nicoshalmar-James/Agent*
*For: Nicoshalmar Spann*
*w/o recourse*
*By: Spann; Dayna-Marie/Agent*
*For: Dayna Spann*
*w/o recourse*

## Mortgage Information

| | |
|---|---|
| Account number | 1317022200 |
| Property address | 3936 Juanita May Ave North Las Vegas, NV 89032 |
| Original principal balance | $216,816.00 |
| Unpaid principal balance¹ | $206,183.81 |
| Maturity date | 10/2048 |
| Deferred balance | $27,655.92 |
| Interest rate | 5.99000% |
| Escrow balance | ($770.03) |

## Past payments breakdown

| | Paid since last statement | Paid year-to-date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $4,282.38 |
| **Total** | **$0.00** | **$4,282.38** |

## Explanation of amount due

| | |
|---|---|
| Principal | $272.0 |
| Interest | $1,026.5 |
| Escrow | $310.2 |
| **Monthly payment** | **$1,608.8** |
| **Original missed payment date** | **07/01/202** |
| **Past due amount** | **$3,219.6** |
| Total payment due on 09/01/2022 | $4,828.2 |

## Important account information



Please see the attached Delinquency Information page for more details on your account status.

## Need mortgage assistance?

# We're here to help



Visit www.chase.com/MortgageAssistance to learn more about options for keeping or selling your home, getting current, and more.

## Ways to pay

Convenient and free ways to make your payment:

 Enroll in automatic payments at www.chase.com or back of statement coupon.

 Make your payment at www.chase.com

 Pay by phone with our dedicated number at 1-833-PAY-CHASE (1-833-729-2427).

 Mail your payment with the coupon below.

## Resources

 www.chase.com/MyMortgage

 Call customer service    1-800-848-9380
(24/7 automated line)
Monday - Friday    8 a.m. - 8 p.m. (ET)
Saturday    9 a.m. - 6 p.m. (ET)

 Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-800-848-9380 o visita www.chase.com/Statement

Mail your payment with the coupon below

CHASE ◯

Check box and fill out the reverse side if you would
like to enroll in automatic payments.

☐

DAYNA SPANN, NICOSHALMAR JAMES
SPANN
Account number                    131702200
Total amount due                  $4,828.22
Payment due date                  09/01/2022    ON DEMAND

CHASE
PO BOX 78420
PHOENIX AZ 85062-8420

Accepted
2/18/2023

Pay to bearer

FOUR THOUSAND EIGHT HUNDRED
TWENTY-EIGHT 22/100

0001317022002 313000 0016L0883 0016L7374 00482822 0001

To make additional principal, escrow, or fee payments, $
www.chase.com or detach coupon and mail with your

Monthly payment
($1,608.81) $                          4,828.2

Late charges
($0.00) $

Fees due
($0.00) $

Additional principal $

Additional escrow $

Total amount enclosed $             4,828.2

⌁50000 50 26⌁: 000 131 70 22 200⌁

FOR DEPOSIT ONLY

By: _Sparia Nicosharlmar-Grubbs_
~~w/o recourse~~

By: Sparia Dayna-Marie the
w/o Recourse

Your bank account may be debited as soon as the same day we receive your payments. You may not receive your check back from your institution.

## Automatic payment enrollment form

**1** Please debit my:

☐ Checking Account    ☐ Savings Account

$1,608.81
Amount Due

1317022200
Mortgage Account Number

**2** _____
Account Holder Name

_____
Financial Institution

$_____
Additional Principal per Month (optional)

_____
Routing Number          Account Number

**3** Day of the month we should withdraw your payment: _____
We'll withdraw your payment on the due date if you leave this blank.
Please allow 10 business days for setup; continue making your payment until you receive confirmation ACH has been setup.

**4** _____          _____
Signature of Financial Institution Account Holder          Date

*By signing above you authorize us, any successor servicer, sub-servicer, or assignee to electronically withdraw monthly payments plus any additional principal you authorize from your personal bank account when I'm due specified. You on the next business day if the due date falls on a non-banking day. Amounts for changes in your payment due before the payment date. You debit/pre-us to change the amount of your debits if rounded if there is a decrease or business day if the due date falls on a non-banking day. If amounts for changes in your payment due before the payment date. Automatic payments may be cancelled if automatic payments are continued or if you, any before the property that decrease in the payment amounts due to changes in the interest rate or escrow, or for any other reason. Automatic payments may be cancelled if automatic payments are continued or if you, any before the property that because the loan has for bankruptcy. If this should occur, please contact us at the address or telephone number listed above for instructions for making payments on the loan. We may also change terms and will prudently required notice in writing. I hereby acknowledge that I have read this agreement and agree to its terms and will keep a copy for my records.*

---

Enroll for free automatic payments by checking the box on the front and mailing in the form in the envelope provided. Learn more at www.chase.com/myoption.

Locate your account and routing number on your check.

YOUR NAME
1234 your street
city, state 12345

1234

CHASE ☉

ᴛᴏ ᴛʜᴇ
ᴏʀᴅᴇʀ ᴏꜰ

$

◁1234567890◁   87654321◁   1234

routing        checking account
number         number

◁123456789◁   87654321◁
routing        checking account
number         number

MSD 22822 C

## Transaction activity

| Transaction date | Description | Total received | Principal | Interest | Escrow | Fees/Advances | Unapplied funds |
|---|---|---|---|---|---|---|---|
| 07/27/2022 | COUNTY TAX PAID | | | | $770.03 | | |

## Additional information

Unless you specify otherwise, we will apply funds received in excess of the payment due to additional periodic payments up to two months ahead. Any funds remaining after application of the periodic payments or any amount insufficient to make an additional payment will be applied to outstanding fees and advances, and then as a principal reduction. All principal reductions are applied after periodic payments are applied.

If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. These benefits and protections may include protection from foreclosure or eviction without a court order, and in some cases, interest rate and fee benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. In addition, some state laws may allow Servicemembers to request a payment deferral.

For more information, please call Chase Military Services at 1-877-469-0110.

## Contact Information and Disclosures

For all of our ways to contact us, please visit www.chase.com/Mortgage-Contact-Us

| Customer Service Inquiries | Designated Address for Notices of Error, Information Requests, and Qualified Written Requests | Insurance Bills & Policies | Overnight Payment |
|---|---|---|---|
| Chase<br>Mail Code LA4-6475<br>700 Kansas Lane<br>Monroe, LA 71203 | Chase<br>Mail Code LA4-6911<br>700 Kansas Lane<br>Monroe, LA 71203-4774 | www.MyCoverageInfo.com/chase<br>Email: chase@mycoverageinfo.com<br>Chase<br>P.O. Box 4465<br>Springfield, OH 45501<br>Fax: 1-678-475-8799<br>(Free of charge from any Chase branch) | Chase<br>ATTN: P.O. Box 71244<br>400 White Clay Center Drive<br>Newark, DE 19711 |

## Account Information Reported to Credit Bureau

We may report information about your Account to credit bureaus. Late payments, missed payments or other defaults on your Account may be reflected in your credit report. If you think we have reported inaccurate information to a credit bureau, please write to us at Chase Home Lending, Mail Code LA4-6945, 700 Kansas Lane, Monroe, LA 71203.

If you do not make your mortgage payment on time or request services from Chase, you may be charged fees. Those fees may include those shown in your loan documents, provided by law, or related to the services provided. The fee structure may change without notice except where prohibited by law. Other fees may be charged for services provided. Fees may not be applicable to certain products and may be limited by law.

### [1]Loan Payoff Information

Your Unpaid Principal Balance is not a payoff quote. Learn more about the payoff process by calling the phone number in the Resources of this statement.

### Important Bankruptcy Information

If you or your account is subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge, this statement is for informational purposes only and is not an attempt to collect a debt.

### Homeowner Assistance

You can call the U.S. Department of Housing and Urban Development at 1-800-569-4287, or the U.S. Department of the Treasury-sponsored HOPE Hotline number at 1-888-995-HOPE (1-888-995-4673) to get free assistance, or visit www.HopeNow.com You can also find a nonprofit HUD-approved counselor who can provide the information and assistance you may need to avoid foreclosure by using the search tool at www.hud.gov/offices/hsg/sfh/hcc/fc/ These HUD-approved housing counseling agencies found on www.HUD.gov can also help you with your household budgeting at no charge. Additional educational resources are available via Fannie Mae's website at www.knowyouroptions.com

You may have the ability to apply for the Department of Treasury's Homeowner Assistance Fund (HAF), if HAF is available in your jurisdiction. If your state or jurisdiction offers HAF programs, you may contact those programs directly for more information, including how to apply.

### Crediting of Payments

Payments will be credited as of the day we receive them if the payment is received by 5:00 p.m. in the time zone in which the mailing address on your payment coupon is located and if:
(a)  the payment is received Monday through Saturday except for legal holidays
(b)  the payment is received at the address shown on your payment coupon
(c)  your payment is made with a check or money order drawn on a U.S. bank in U.S. dollars
(d)  the attached payment coupon is enclosed with your payment and
(e)  your payment is sent in the enclosed return envelope.

Credit for payments made in any other manner may be delayed for up to five (5) days. Please allow five to seven (5-7) days for payments to reach the payment address. Please do not send cash through the mail. Please include your account number and name on the front of your check or money order. Do not staple, tape or paper clip your payment to your payment coupon. If you want to change how we applied your payment, you

**Contact Information and Disclosures** (continued)

 JPMorgan Chase Bank, N.A. Member FDIC. ©2019 JPMorgan Chase & Co.



## Delinquency information

### Important notice

**You've missed one or more payments and your mortgage loan is in default.** This summary highlights the status of your account, your missed payments and how to get help.

We encourage you to call us at 1-800-848-9380 so we can help you apply for options that may allow you to stay in your home, such as a repayment plan, forbearance plan or loan modification, or otherwise avoid foreclosure through a short sale or deed-in-lieu of foreclosure. You can find more information on our loss mitigation options and application process at www.chase.com

### Amount due

As of 08/16/2022, $4,828.22 is required to bring your loan current.

The total fees due on your account are $0.00, which includes late fees of $0.00, NSF fees of $0.00, and other fees of $0.00. These amounts are included in the total shown above. Other fees may include charges as part of the terms of your account, permitted by applicable law, and/or were authorized for services we completed.

This amount was calculated on the date referenced above and is good for 10 days from the date of this statement. This means it may change if additional fees are billed after this date. Call us at 1-800-848-9380 to confirm the full payment amount you owe to bring your account up-to-date.

### Delinquency status

**Your mortgage loan payment was due on 07/01/2022, and is 46 days past due. If you have already made your past-due payments, please disregard this notice.**

If you have not made past-due payments, you may be at risk of foreclosure or other fees and charges.

### Summary of most recent missed payments

| Payment due date | Amount remaining past due |
|---|---|
| 07/01/2022 | $1,610.60 |
| 08/01/2022 | $1,608.81 |

### Other resources

You can call the U.S. Department of Housing and Urban Development at 1-800-569-4287, the U.S. Department of the Treasury sponsored HOPE Hotline number at 1-888-995-HOPE (1-888-995-4673) to get free assistance, or visit www.HopeNow.com You can also find a nonprofit HUD-approved counselor who can provide the information and assistance you may need to avoid foreclosure by using the search tool at www.hud.gov/offices/hsg/sfh/hcc/fc/ These HUD-approved housing counseling agencies are found on www.HUD.gov can also help you with your household budgeting at no charge. Additional educational resources are available via Fannie Mae's www.knowyouroptions.com website.

### Equal credit opportunity act notice

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20006.

### Important notice to servicemembers and their dependents

If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from foreclosure or eviction, and in some cases, interest rate benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, California law allows for a six-month deferral if certain conditions are met.

For more information, please call Chase Military Services at 1-877-469-0110.

**This Page Intentionally Left Blank**



**UNITED STATES POSTAL SERVICE.**

TOPAZ
2675 N DECATUR BLVD
LAS VEGAS, NV 89108-2991
(800)275-8777

02/21/2023                                09:02 AM
-------------------------------------------
| Product | Qty | Unit Price | Price |

-------------------------------------------
PM Express 1-Day       1                  $28.75
Flat Rate Env
    Ogden, UT 84201
    Flat Rate
    Signature Requested
    Scheduled Delivery Date
        Wed 02/22/2023 06:00 PM
    Money Back Guarantee
    Tracking #:
        EI575889440US
    Insurance                             $0.00
        Up to $100.00 included
    Return Receipt                        $3.35
        Tracking #:
            9590 9402 7182 1284 0363 03
Total                                     $32.10

-------------------------------------------
Grand Total:                              $32.10
-------------------------------------------
Debit Card Remit                          $32.10
    Card Name: VISA
    Account #: XXXXXXXXXXXXX2167
    Approval #: 170221
    Transaction #: 305
    Receipt #: 029296
    Debit Card Purchase: $32.10
    AID: A0000000980840          Chip
    AL: US DEBIT
    PIN: Verified
-------------------------------------------

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
https://www.usps.com/help/claims.htm
or call 1-800-222-1811

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device,



# USPS Tracking®

FAQs ›

Remove ✕

**Tracking Number:**

## EI575899436US

Copy      Add to Informed Delivery (https://informeddelivery.usps.com/)

### Scheduled Delivery by

## WEDNESDAY

## 22 February 2023 ⓘ

by

## 6:00pm ⓘ

Your item was delivered to the front desk, reception area, or mail room at 4:24 pm on February 22, 2023 in NEW YORK, NY 10017. Waiver of signature was exercised at time of delivery.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered

**Delivered, Front Desk/Reception/Mail Room**

NEW YORK, NY 10017
February 22, 2023, 4:24 pm

**See All Tracking History**

Feedback

---

**Text & Email Updates**                                                    ⌄

---

**Proof of Delivery**                                                        ⌄

---

**USPS Tracking Plus®**                                                      ⌄

---



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:

Jeremy Barnum Depot
CHASE BANK
470 Park Avenue
New York, New York
10017

9590 9402 7182 1284 0365 01

EI 575 899 436 US

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type                      ☐ Priority Mail Express®
☐ Adult Signature                    ☐ Registered Mail™
☐ Adult Signature Restricted Delivery ☐ Registered Mail Restricted Delivery
☐ Certified Mail®                    ☐ Signature Confirmation™
☐ Certified Mail Restricted Delivery ☐ Signature Confirmation Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

Domestic Return Receipt

EI 575 899 436 US

**UNITED STATES POSTAL SERVICE®**

**PRIORITY MAIL EXPRESS®**

⬅ PEEL FROM THIS CORNER

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)    PHONE (     )
NICOSHAUMAR SPANN & DAVINA SPANN
3436 JUANITA MAY AVENUE
NORTH LAS VEGAS NEVADA 89032

**DELIVERY OPTIONS (Customer Use Only)**

☐ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE (     )
Jeremy Barnum [CFO]
CHASE BANK
270 Park Avenue
New York, New York

ZIP + 4® (U.S. ADDRESSES ONLY)
1 0 0 1 7 - ____

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

LABEL 11-B, MAY 2021       PSN 7690-02-000-9996

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.       Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| | | $ |

☐ 1-Day  ☐ 2-Day  ☐ Military  ☐ DPO

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time ☐ 10:30 AM ☐ 3:00 PM | Insurance Fee | COD Fee |
|---|---|---|---|
| | | $ | $ |

| Time Accepted ☐ AM ☐ PM | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| | $ | $ | $ |

| Weight | Flat Rate ☐ | Acceptance Employee Initials |
|---|---|---|
| ___ lb ___ oz | | |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ | $ |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
|---|---|---|
| | | |

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
|---|---|---|
| | | |

EI 575 899 436 US

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Jeremy Barnum [CFO]
CHASE BANK
270 Park Avenue
New York, New York 10017

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery

## Customer Retains This Copy

Money-back Guarantee: If the mailer submits an item at a designated USPS® Priority Mail Express® acceptance location on or before the specified deposit time, the Postal Service will deliver or attempt delivery to the addressee or agent before the applicable delivery date and time. Mailer may request the addressee's signature from the mailing. If the Postal Service does not deliver or attempt delivery by the specified time and the mailer files a valid claim for a refund, the Postal Service does not deliver the postage, unless an exception applies. See Mailing Standards of the United States Postal Service, Domestic Mail Manual (DMM®) 604.9.5.5 which is available at pe.usps.com.

Note: The Postal Service does not offer money-back guarantee for military or DPO shipments delayed due to customs inspections or the item was destined for an APO/FPO/DPO that was closed on the intended day of delivery or the delay was caused by one of the commitments and Priority Mail USPS.com® or your local Post Office for information on delivery commitments. DMM 604.9.5.5. Consult Express Military Service (PMEMS). For details, see DMM 703.2.6, which is available at pe.usps.com.

When a mailer submits a Priority Mail Express item requiring a signature and the Postal Service cannot obtain the signature on the first attempt, the Postal Service leaves a notice for the addressee. If the addressee does not claim the item within 5 calendar days, the Postal Service returns the item to the sender at no additional charge.

Insurance coverage: The Postal Service provides insurance only in accordance with postal regulations in the DMM, which is available at pe.usps.com. The DMM sets forth the specific types of losses that are covered, the limitations on coverage, terms of insurance, conditions of payment, and adjudication procedures. Certain items are not insurable. The DMM consists of federal regulations, and USPS personnel are not authorized to change or waive these regulations or grant exceptions. A mailer who requires information on Priority Mail Express insurance may contact the Postal Service before submitting an item. Limitations prescribed in the DMM provide, in part, that:

1. Insurance coverage extends to the actual value of the contents or to the time of mailing or the cost of repairs, not to exceed the insured limit for the item.

2. The Postal Service insures the contents of Priority Mail Express "merchandise" items (with "merchandise" defined by postal regulations) against loss, damage, or missing contents. The Postal Service includes coverage up to $100 per mailpiece at no additional charge. The merchandise insurance up to $5,000 may be available for purchase. Additional insurance for Priority Mail Express items is not available unless a signature is required.

3. The Postal Service insures "nonnegotiable documents" (as defined by postal regulations) against loss, damage, or missing contents up to $100 per mailpiece (or document reconstruction, subject to additional limitations for multiple pieces lost or damaged in a single catastrophic occurrence. Document reconstruction insurance provides reimbursement for the reasonable costs incurred in reconstructing duplicates of nonnegotiable documents mailed. Document reconstruction insurance coverage above $100 per mailpiece is not available. The mailer should not attempt to purchase additional document insurance, because additional document insurance is void.

4. The Postal Service does not provide coverage for negotiable items (e.g., currency), or currency.

5. The Postal Service does not provide coverage for consequential losses due to loss, damage, or delay of Priority Mail Express items or for concealed damage, spoilage of perishable items, and articles improperly packaged or too fragile to withstand normal handling in the mail. For additional limitations and terms of coverage, terms, and limitations are subject to change. For additional limitations and terms of coverage, consult the DMM, which is available at pe.usps.com.

Indemnity Claims (Loss, Damaged or Missing Contents): Either the mailer or the addressee may file an indemnity claim for loss, damaged or missing contents. The claimant may submit the claim online at usps.com, or by mail. For more information see Publication 122, Domestic Claims: Customer Reference Guide. The timelines for claims are as follows: claims for loss — no sooner than 7 days but no later than 60 days after the date of mailing; claims for damage or missing contents — immediately but no later than 60 days from the date of mailing. Extra refund request either online at USPS.com or at retail locations. Refund requests for postage must be submitted no sooner than 3 days and no later than 30 days from the date of the mailing. Extra Services fees (not including Priority Mail Express) may be refunded once the article was submitted only. Extra mailing service fees and postage can only submitted once. Extra Services fees (not including Priority Mail Express) may be submitted online or combined into a single submission.

Refund of Postage and Fees (Service Performance): If delivery of a Priority Mail Express (PME) item does not meet the scheduled delivery commitment, unless a commercial customers may submit a refund request by visiting USPS.com. Retail customers may submit a refund request either online at USPS.com or at retail locations. Refund requests for postage must be submitted no sooner than 3 days and no later than 30 days from the date of the mailing. Extra Services fees (not including Priority Mail Express) may be submitted once for all applicable refunds. Refund requests for PME or PME with Extra Services must be combined into a single submission.

Thank you for choosing Priority Mail Express service.

Tracking: For USPS Tracking, scan the QR Code below or go to USPS.com or call 800-222-1811.



EI 575 899 436 US
Priority Mail Express tracking number

LABEL 11-B  MAY 2021    PSN 7690-02-000-9996

**United States**
**Postal Service**

5590 9402 7182 1284 0365 01

USPS TRACKING#

• Sender: Please print your name, address, and ZIP+4® in this box•

NICOSI AUMAR SPANN / DAYNA SPANN
3936 JUANITA MAY AVENUE
NORTH LAS VEGAS NEVADA
89032

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

EI 575 899 436 US